743 A.2d 772

**William Charles ISLEY**

v.

**STATE of Maryland.**

**No. 6910, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 4, 2000.

612

John Christopher Belcher, Oxon Hill, for appellant.

Jason F. Trumpbour, Staff Attorney (J. Joseph Curran, Jr., Attorney General and Diane E. Keller, Assistant Attorney General, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and MOYLAN and SALMON, JJ.

MOYLAN, Judge.

This appeal affords us the opportunity to examine in some depth the fundamental nature of a Motion for a New Trial. We will be particularly concerned with the threshold question of the reviewability of a trial judge's decision either to deny or to grant a new trial. Our focus will also be on the contrasting natures and purposes of, on the one hand, 1) an appeal of a criminal conviction, which is decided by the objective resolution of legal issues; and, on the other hand, 2) a Motion for a New Trial, which is entrusted to a trial judge's subjective "sense" or "feel" as to whether true justice was done, a matter quite aside from any necessary question of legal error.

The appellant, William Charles Isley, was convicted by a Prince George's County jury of reckless endangerment. On this appeal, he contends:

1. that the evidence was not legally sufficient to support his conviction; and

2. that the trial court abused its discretion in denying his Motion for New Trial.[1]

The charge stemmed from an incident between the appellant and his wife, Pamela Stevenson, "on or about December 10, 1997" during which the appellant allegedly threatened his wife with a lighted blow torch, pointed a gun at her head, raped, and sodomized her. A number of other charges were initially brought against the appellant. The jury returned the verdicts of not guilty, however, with respect to charges of first-degree assault and of using a handgun in the commission of a felony. A mistrial was declared with respect to the charge of second-degree assault after the jury was unable to reach a unanimous verdict. The trial court had earlier granted a motion for a judgment of acquittal with respect to the charge of theft. The conviction was only on the charge of reckless endangerment.

## The State's Request for Alibi Witnesses

Both of the appellant's contentions arise out of an unusual procedural quirk. Prior to trial, the State filed a motion pursuant to Maryland Rule 4–263(d) [2] seeking:

> [t]he name and address of each witness other than the defendant whom the defendant intends to call as a witness

---

1. We have granted the appellant's Motion to Supplement the Record on Appeal, a motion unopposed by the State, so that the appellant's post-trial Motion to Reconsider Motion for Judgment of Acquittal or, in the Alternative, for a New Trial, which was filed with the Circuit Court for Prince George's County on December 22, 1998 and subsequently acted on by the trial judge, would properly be before us on this appeal. Actually, the appellant's motion was in response to the *sua sponte* request of the Court that the appellate record be so supplemented.

2. Maryland Rule 4–263, Discovery in Circuit Court, provides:
   (d) **Discovery by the State.**—Upon the request of the State, the defendant shall:
   (3) *Alibi Witnesses.* Upon designation by the State of the time, place, and date of the alleged occurrences, furnish the name and address of each person other than the defendant whom the defendant intends to call as a witness to show that the defendant was not present at the time, place, and date designated by the State in its request.

to show that he was not present at the time, place, and date designated by the State. *State alleges that the offenses occurred on or about December 10, 1997, at approximately 9:00 a.m. through 11:30 p.m.*, at 5838 Holly Springs Road, Capitol Heights, Maryland.

(Emphasis supplied).

In response to the State's request, the appellant filed a "Motion for More Specific Rule 4–263(d)(3) Request." In that motion, he complained that the time period provided in the State's request was "overly broad" in that it required:

the defendant to account for his whereabouts not only for virtually the entire day of December 10, 1997, but for other days "on or about" that same day, which in ordinary language suggests a four or five day period.

The appellant requested that either 1) the State be required "to state the exact date and time, within a two-hour range, when it alleges the defendant committed each of the offenses set forth in the indictment" or 2) the appellant be "excused from compliance with the notice requirements of Rule 4–263."

In response to the demand for greater specificity, the State replied that "[a]fter speaking with the complaining witness, the State will provide the following as to the time of the incident:  4:00 p.m. to 11:30 p.m." Following the more particularized request, the appellant neither disclosed any potential alibi witnesses for that designated seven-and-a-half-hour time frame nor presented any alibi defense at trial.  After the defense motion for a judgment of acquittal was denied at the end of the entire case, the appellant was convicted of reckless endangerment.  The appellant subsequently filed 1) a motion to reconsider the motion for judgment of acquittal or, in the alternative, 2) a Motion for New Trial.  Both motions were denied.

### Legal Sufficiency of the State's Case
### Unaffected by Amended Request for Alibi Witnesses

■ The appellant first contends that the trial court erred in denying his motion for a judgment of acquittal based on the

failure of the State to produce sufficient evidence that the crime necessarily took place between 4:00 p.m. and 11:30 p.m. on December 10, 1997, the time of the crime inferentially alleged by the State by its response to the appellant's request for greater specificity in the State's discovery request. This contention goes to the denial of the motion for acquittal made at the end of the entire case, not to the denial of the post-trial motion for a reconsideration of that earlier denial. There has been no appeal from that later denial.

The appellant contends that although he never requested a Bill of Particulars under Maryland Rule 4–241, the State's fine-tuning of its request for discovery "should be viewed as the functional equivalent of a response to an implied Bill of Particulars." The appellant contends that the State was, consequently, required to prove that the offenses did in fact take place between the hours of 4:00 p.m. and 11:30 p.m. on December 10, 1997. The appellant argues that because the State failed to do so, the evidence was legally insufficient to support his conviction. We do not agree.

The issue of whether information provided by the State to a defendant in a Bill of Particulars is binding on the State at trial is not before us. Although the appellant was entitled, pursuant to Maryland Rule 4–241, to request a Bill of Particulars in this case, the dispositive fact is that he chose not to do so. The issue regarding the time of day the alleged offenses took place only arose in the context of the State's discovery motion pursuant to Rule 4–263(d)(3), seeking the names and addresses of potential alibi witnesses. There is no question that had the State never made such a request, the fact that the evidence was that the assaults may have taken place in the morning rather than in the evening would have been completely unexceptionable. Although the victim could place the attack within a period of a day or two, she was vague as to the precise time of day. The appellant, at the time of the crime, had been married to the victim for approximately two years. At the time of that marriage, he was a widower in his early 60's. He met the victim, who was approximately forty years his junior, when he "picked her up" on Alabama Avenue in the

District of Columbia, where she was "cruising" as a prostitute. Contributing to the vagueness of her testimony were the facts that she had been addicted to crack cocaine and that she was taking medication for AIDS.[3] She could only fix the day of the crime by recalling that it was approximately two or three days before she filed charges against the appellant on December 11, 1997. As to the time of day, all she could say was that the appellant's attack on her started in the morning and lasted, off and on, until approximately 11 P.M. A perfectly proper indictment gave the State ample latitude within which to place the time of the crime.

We hold that the State's narrowing of a question as part of its request for alibi witnesses under Rule 4–263(d) is not the functional equivalent of an answer to a properly filed Bill of Particulars. The State's response to the appellant's request that the State narrow the time frame in its demand for discovery did not require the State to narrow its proof of guilt. We see no error in the trial court's denial of the appellant's motion for judgment of acquittal based on the alleged insufficiency of the State's evidence.

### The Motion for a New Trial: A Poor Vehicle for Challenging Trial Error

The appellant next contends that the trial court abused its discretion in denying his Motion for a New Trial because the State misled him as to when the State's evidence would show that the alleged offenses occurred. He contends that he was thereby misled into forgoing a potential alibi defense. Actually, the appellant originally asserted three separate grounds for relief. He claimed that he was entitled to a new trial on any of three theories:

1. the appellant's "inability to prepare an alibi defense given the misleading particulars provided by the State";

---

**3.** Between the trial and the sentencing, the victim died of pneumonia associated with AIDS.

2. the State's conduct during the trial in "eliciting highly prejudicial evidence of uncharged crimes, failing to disclose potentially exculpatory material, and repeatedly attempting to inflame the jury by references to the defendant's alleged character and lifestyle"; and

3. the fact that "two critical defense witnesses refused to testify after being threatened with serious bodily harm by individuals not known to them but whom they believed to be connected with the complaining witness."

Demonstrably, the latter two claims concern alleged trial errors that should more properly have been asserted by way of direct appeal. Although nothing, including trial error, is theoretically barred from consideration on a Motion for a New Trial, trial errors are not classic grist for the New–Trial–Motion mill. If such alleged errors were not preserved for appellate review by timely objection at trial, raising them in a Motion for a New Trial and then appealing the denial of that motion is not a way of outflanking the preservation requirement. *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 61, 612 A.2d 1294 (1992). The non-preservation, moreover, is in and of itself an unassailable reason for the trial judge to deny the New Trial Motion, should he, in his discretion, choose to do so.

Even if preserved by timely objection at trial, such claims of trial error have far more likelihood of success on appeal than they do by way of a Motion for a New Trial. On appeal, all a defendant need do is persuade the appellate court objectively that an error occurred—subject only to the State's heavy burden of persuading the court beyond a reasonable doubt that such error was harmless. Presumptively prejudicial error can be established as a matter of law and appellate reversal of a conviction will follow.

On a Motion for a New Trial, by contrast, even objectively demonstrated trial error will avail a defendant naught unless he can also persuade the trial judge, subjectively, that the error had a substantial likelihood of causing an unjust verdict. Just because trial error is established as a

matter of law, the trial judge need not necessarily "feel" that the ultimate verdict was unjust. In sharp contrast with the issue of harmless error in the appellate context, where a heavy burden is on the State, in the context of a Motion for a New Trial the burden is on the defendant to show a significant likelihood of prejudice and to energize the trial judge's subjective conscience.

In any event, these two latter claims have not been pursued and call for no further consideration here.

### Preservation as a Factor, But Not as a Requirement

The claim that the appellant was misled into forgoing a possible alibi defense has been pursued, at least obliquely, by way of his Motion for a New Trial. The non-preservation of this claim by way of a timely objection at trial, however, poses a daunting, albeit not an insurmountable, hurdle to his request for a new trial. The issue was lost, of course, as far as raising it on direct appeal was concerned. It is clear, moreover, that raising it in a Motion for a New Trial and then appealing the claim's rejection in that forum will not serve to bring the claim back from the dead for purposes of appellate review. If we will not look at the non-preserved original, neither will we look at its reflection in the mirror of a New Trial Motion. In *Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. at 61, 612 A.2d 1294, Judge McAuliffe was very clear on this point:

> The defendant is correct in arguing that ordinarily a party will not be permitted to raise on appeal an error to which he has not interposed a seasonable objection at trial. Accordingly if Judge Murphy had denied Buck's motion [for a new trial] in this case [based on such non-preserved claim], Buck would not have been permitted to argue those matters on appeal.

What is fatal to a claim on direct appeal is, even if not quite fatal, at least seriously compromising to the same claim on a Motion for New Trial. Judge McAuliffe further explained, 328 Md. at 62, 612 A.2d 1294:

We agree with the intermediate appellate court that *the failure of the moving party to object to an alleged error or impropriety at trial is a significant factor to be considered by the trial judge when that error is later argued in support of a motion for new trial.* A motion for new trial should not be an opportunity to "sandbag" an opponent, nor ordinarily to correct oversights that might have been remedied at trial if seasonably noted.

(Emphasis supplied). *See also Banegura v. Taylor,* 312 Md. 609, 625, 541 A.2d 969 (1988)("Banegura's failure to object to rulings, instructions, and arguments during the course of the trial may be taken as a waiver of error, precluding the assertion of those issues in a motion for new trial."); *Miller Bldg. Supply v. Rosen,* 305 Md. 341, 503 A.2d 1344 (1986)("Miller did not except to the compensatory damage instructions. There was no abuse of discretion in denying the motion [for a new trial]."); *Brinand v. Denzik,* 226 Md. 287, 291–93, 173 A.2d 203 (1961).

Had the appellant raised the problem of his still embryonic alibi defense at trial, as he well could have and should have, the trial judge could have asked for a proffer as to who precisely the alibi witnesses would be and as to what they probably would say. When the claim was only advanced as a still unexplored possibility in the New Trial Motion, however, the trial judge had no way of knowing whether the lost alibi defense was truly a matter of substance or was merely an opportunistic will-o'-the-wisp. At the trial, moreover, the appellant, fully aware of the State's proof as of the end of the State's case, could readily have asked for a continuance of a few hours or even a day or so in order to check out the possible alibi. All that was apparently involved was the appellant's employment attendance record at his place of work a few blocks from the appellant's home.

To the extent to which the State's proof showed that the crime occurred at a time after the close of employment, the appellant's argument does not even assert any prejudice—surprise and disappointment, perhaps, but no prejudice.

Even now, the appellant does not suggest any lost alibi defense for the after-work hours.

■ The fact that the appellant's claim may suffer a credibility gap, however, does not foreclose his raising of the claim. Because a Motion for a New Trial appeals to the trial judge's subjective "sense" or "feel" as to whether a verdict was unfair or unjust, he may consider anything he wants to, preserved or unpreserved. Again, *Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. at 62, 612 A.2d 1294, explained:

> To some of this conduct Buck lodged objections, and some of the objections were sustained. *In other instances, Buck did not object. . . . We see no reason why the trial judge should not have considered the possible cause of a verdict* which he found to be against the weight of the evidence, *even though plaintiff's counsel had not objected to all of the arguments to which the judge later referred.*

(Emphasis supplied).

The non-preservation of the claim in this case could well serve as an unassailable reason for the trial judge, in his discretion, to reject the claim and to deny the motion. *Banegura v. Taylor, supra; Miller Bldg. Supply v. Rosen, supra; Brinand v. Denzik, supra.* It does not serve, however, as a legal bar to the trial judge's consideration of the claim. Indeed, in the *Buck v. Cam's Broadloom Rugs, Inc.* case itself, the Court of Appeals affirmed the granting of a new trial by the trial judge on the basis of a combination of alleged trial errors, some of which had not been preserved for review on direct appeal.

### Maryland Rule 4–331

■ Albeit of common law origin,[4] the Motion for a New Trial following a criminal conviction in Maryland now falls

---

4. There is no constitutional right under the Due Process Clause, federal or state, to file a Motion for New Trial. It is exclusively a common law form of post-trial relief now recognized by the Maryland Rules. *State v. Giles,* 239 Md. 458, 467, 212 A.2d 101 (1965); *Brown v. State,* 237 Md.

under the umbrella of Maryland Rule 4–331.[5] The Rule is titled "Motion for new trial" and, in pertinent part, covers three post-trial situations:

(a) *Within ten days of verdict.* On Motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial.

(b) *Revisory power.* The court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial:

. . .

(2) in the circuit courts, on motion filed within 90 days after its imposition of sentence.

Thereafter, the court has revisory power and control over the judgment in case of fraud, mistake, or irregularity.

(c) *Newly discovered evidence.* The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:

. . .

(2) in a circuit court, on motion filed within one year after its imposition of sentence or the date it receives a mandate issued by the Court of Appeals or the Court of Special Appeals, whichever is later.

By way of overview, *Love v. State,* 95 Md.App. 420, 426, 621 A.2d 910 (1993) looked at subsections (a), (b), and (c) and observed:

The Motion is available on three progressively narrower sets of grounds but over the course of three progressively longer time periods.

---

492, 498–99, 207 A.2d 103 (1965); *Pinkney v. State,* 9 Md.App. 283, 286, 263 A.2d 871 (1970).

**5.** Its civil counterparts are Maryland Rules 2–533 and 2–535. Art. 27, § 594 also deals with the timing and the forum for a hearing on a Motion for New Trial in a criminal case.

### Subsection (b):
### The Vestigial Remains of
### The Motion in Arrest of Judgment

As we narrow our focus, we may dispense, as far as this case is concerned, with any further consideration of subsection (b), dealing with the "revisory power" of the trial court. In order to understand the total scheme of Rule 4–331, however, it behooves us to have some understanding of where subsection (b) came from and how it fits into the total picture. At first glance, one is hard pressed to distinguish between "order[ing] a new trial ... in the interest of justice" under subsection (a) and "set[ting] aside an unjust or improper verdict" under subsection (b). Should not "unjust or improper" verdicts, *ipso facto*, be set aside in the "interest of justice"? Why is there a ten-day limitation on seeking the first form of relief but a ninety-day window of opportunity through which to seek the second? Why is the ten-day period measured from the rendering of the verdict while the ninety-day period is measured from the imposition of the sentence? It requires an almost Sherlockian exercise in detection to figure out what subsection (b) is all about. Better that the attempt be made now, however, than twenty-five years from now, as the clues are fast fading.

The three substantive provisions dealing with post-trial relief now contained in Rule 4–331(a), (b), and (c) were, prior to July 1, 1984, in all essential characteristics (there have been modest changes in filing deadlines) the three largely verbatim provisions of former Rule 770a, b, and c. In moving from Rule 770 to Rule 4–311, to be sure, subsections (b) and (c) did flip positions. What had been Rule 770b became Rule 4–331(c); what had been Rule 770c became Rule 4–331(b). Otherwise, nothing much was changed in the 1984 reorganization of the Rules.

Rule 770, in its turn, had come into existence on July 1, 1977, as part of a major revision of the Maryland Rules of Criminal Procedure, then known as the Chapter 700 Rules.

The Court of Appeals's action in rescinding and reenacting all of Chapter 700 had followed a three year study of the Criminal Rules by the Rules Committee itself and by a select committee of consultants.

The new (as of 1977) Rule 770 was an amalgamation of earlier Rule 759 and parts of earlier Rule 764. The pedigree of subsection 770a is easy to establish. It came with no essential change straight from Rule 759a, which had provided, in essentially verbatim terms, that the trial judge "may grant a new trial ... in the interest of justice." It was simply the embodiment in the Maryland Rules of the common law Motion for New Trial.

Nor is there any problem with recognizing the pedigree of subsection 770b (now 4–331(c)). It came, without any substantial change, straight from Rule 764b3, which had provided for an extended 90–day (now one year) time period within which to file for a new trial on the ground of newly discovered evidence. The provision creating an extended filing time in the case of newly discovered evidence had first been promulgated by the Court of Appeals in 1965. Its curious placement in then Rule 764 instead of in then Rule 759, where it might seem to have more properly belonged, is probably explained by the fact that its 90–day filing time corresponded to Rule 764b's 90–day filing time for a motion for reduction of sentence.

It is the pedigree of 1977's new Rule 770c (now Rule 4–331(b)) that is more obscure. At first glance, it bears a surface resemblance to former Rule 764a, dealing with the correction of an illegal sentence at any time, and to former Rule 764b1, dealing with the reduction or downward modification of a sentence within 90 days. The resemblance, however, is deceptive. Those two subsections of the parent Rule 764 were transferred by the 1977 revision to then new Rule 774 and are now, post 1984, Rule 4–345. The transfer of those sections exhausted the provisions of then Rule 764. Nothing from that rule is unaccounted for. Earlier Rule 764 cannot, therefore, account for the parentage of 1977's new Rule 770c.

By process of elimination, the only remaining eligible parent for new Rule 770c (now Rule 4–331(b)) is predecessor Rule 759b. The change in wording between predecessor Rule 759b and successor Rule 770c, however, was sweeping enough almost to obscure that parentage beyond hope of future recognition. The subhead of subsection 770c (and of current Rule 4–331(b)) was "Revisory Power of Court," leading the unwary to an instinctive but incorrect analogy to former Rule 764, which had also been titled "Revisory Power of Court" (as its true and legitimate descendant, Maryland Rule 4–345, is still titled). Rule 770c's true predecessor, Rule 759b, was, by contrast, titled "Motion in Arrest of Judgment," an archaic term of art that dropped utterly out of our Maryland lexicon with the Chapter 700 Rules Revision of 1977. The name may have disappeared but the vestige that remains of that venerable post-trial remedy lives on, albeit in virtual obscurity, as Rule 4–331(b). It is what is left of the Motion in Arrest of Judgment.

The function of Rule 4–331(b) is that of "set[ting] aside an unjust or improper verdict." That focus on the **verdict**, as opposed to other flaws or errors, was always one of the concerns of the common law Motion in Arrest of Judgment and was its only remaining concern in Maryland after 1852.

As complementary post-trial remedies, predecessor subsections 759a, a Motion for New Trial, and 759b, a Motion in Arrest of Judgment, lived side by side under the common umbrella of "Motions After Verdict." Numerous early Maryland cases discussed the two post-trial motions together, generally as they contrasted the absolute unreviewability of a judge's discretionary ruling on a Motion for New Trial with the limited reviewability of a judge's ruling on a Motion in Arrest of Judgment under the abuse of discretion standard. *Quesenbury v. State,* 183 Md. 570, 572, 39 A.2d 685 (1944); *Wilson v. State,* 181 Md. 1, 8, 26 A.2d 770 (1942); *Bosco v. State,* 157 Md. 407, 146 A. 238 (1929); *Myers v. State,* 137 Md. 482, 487–88, 113 A. 87 (1921); *Miller v. State,* 135 Md. 379, 382, 109 A. 104 (1919). In *Pinkney v. State,* 9 Md.App. 283,

292, 263 A.2d 871 (1970), Judge Orth also contrasted the two post-trial motions substantively:

> Rule 759 not only contemplates a motion for a new trial but by § b provides for an arrest of judgment in criminal causes. "Upon motion of a party or on its own motion the court shall arrest judgment only for an error apparent on the face of the record, and which could not have been reached by motion to dismiss or grant appropriate relief before or during the trial." *The basic distinctions between a motion for a new trial and a motion for arrest of judgment are that the former is predicated upon matters extrinsic to the record and is not, as a general rule, appealable, while the latter is predicated upon matters intrinsic to the record and is appealable.*

(Emphasis supplied).

The Motion in Arrest of Judgment has long been recognized in federal criminal practice and is provided for by Criminal Rule of Procedure 34. In *United States v. Sisson,* 399 U.S. 267, 280–83, 90 S.Ct. 2117, 26 L.Ed.2d 608, 619–20 (1970), the Supreme Court described how the motion is concerned only with matters "on the face of the record" (the pleadings, the form of the verdict) and not with the evidence or the trial proceedings:

> An arrest of judgment was the technical term describing the fact of a trial judge refusing to enter judgment on the verdict because of an error appearing on the face of the record that rendered the judgment invalid.... For the purpose of this case *the critical requirement is that a judgment can be arrested only on the basis of error appearing on the 'face of the record, and not on the basis of proof offered at trial.* This requirement can be found in early English common law cases.... Once transported to the United States, this essential limitation or arrests of judgment was explicitly acknowledged by this Court.... This venerable requirement of the common law has been preserved under the Federal Rules of Criminal Procedure, for the courts have uniformly held that in granting a motion in arrest of judgment under Rule 34, *a district court must not*

*look beyond the face of the record. ... Therefore, ... a decision based on evidence adduced at trial cannot be one arresting judgment.*

(Emphasis supplied).

In IV *Wharton's Criminal Procedure* (12 [th] ed. by Charles E. Torcia, 1976), 160–61, the Motion in Arrest of Judgment is characterized as "the post-trial counterpart of the pre-trial demurrer" and then further described:

[A]s with the demurrer, *the motion in arrest of judgment may be utilized only where the claimed defect is apparent on the face of the record, i.e., the indictment or information, plea, verdict, and sentence, as distinguished from the evidence introduced at the trial.*

The most common grounds for a motion in arrest of judgment are lack of jurisdiction and failure of the indictment or information to state a crime.

(Emphasis supplied). *See also* Hochheimer, *Crimes and Criminal Procedure* (2d ed., 1904), 208–09.

The distinction made by *Pinkney v. State, United States v. Sisson, Wharton,* and *Hochheimer* between, on the one hand, errors apparent "on the face of the record" or "intrinsic to the record" and, on the other hand, "matters extrinsic to the record" is a difficult one to grasp for the modern practitioner who thinks of "the record" as embracing a trial transcript with all of the evidentiary rulings and containing all of the evidence. In *United States v. Sisson,* however, Justice Harlan gave us the benefit of an earlier linguistic usage:

In early days the "face of the record" simply included the material found on the "judgment roll." In a criminal case today it has been thought to include "no more than the indictment, the plea, the verdict ... and the sentence."

399 U.S. at 281 n. 10, 90 S.Ct. 2117 (citation omitted).

Halfway through the Nineteenth Century, the Motion in Arrest of Judgment lost much (but not quite all) of its utility when the Maryland Legislature in 1852 passed what became Art. 27, Sect. 533 (later 553), providing that a judgment could

not be arrested "for any matter or cause which might have been a subject of demurrer to the indictment, inquisition or presentment." *Simmons v. State*, 165 Md. 155, 168–69, 167 A. 60 (1933) ("The scope of a motion in arrest of judgment has been narrowed.... This enactment prevents the questions raised on the demurrer to the indictment and plea of limitation from being considered on the motion."); *McCurdy v. State*, 151 Md. 438, 440–41, 135 A. 161 (1926) ("Upon these authorities, it is the settled law of this state that nothing can be made the basis of a motion in arrest of judgment which is the subject of demurrer.").

That drastic curtailment of the scope of the motion under Maryland law, but apparently not elsewhere, eliminated as a basis for a Motion in Arrest of Judgment any attack on the adequacy of the charging document and left only an attack on the facial adequacy of the verdict, the tell-tale concern of what is now Rule 4–331(b). That reduction in the scope of the motion prompted the observation by Ginsberg and Ginsberg, *Criminal Law and Procedure in Maryland* (1940), 412:

> The motion in arrest of judgment has thus lost much of its effect, and *it seems that today the only possible ground for filing such a motion would be a defect in the verdict.*

(Emphasis supplied).

It is thus appropriate that the former Motion in Arrest of Judgment speaks only, in its vestigial form as Rule 4–331(b), of "set[ting] aside an unjust or improper verdict." In that limited regard, however, the former common law post-trial motion still retains some residual vitality.

The only three appellate decisions we have found dealing with the merits of Rule 4–331(b) are those of this Court in *Murphy v. State*, 100 Md.App. 131, 640 A.2d 230 (1994); *Jones v. State*, 111 Md.App. 456, 681 A.2d 1190 (1996); and *Bates v. State*, 127 Md.App. 678, 736 A.2d 407 (1999). In *Murphy*, following his conviction for theft on an agreed statement of facts, the defendant requested the trial judge "to set aside the verdict" on the ground that the evidence was not legally sufficient to show that he had been guilty of theft, as opposed

to being guilty of a bad check law violation. The trial judge denied the post-trial motion that we concluded was "apparently pursuant to Maryland Rule 4–331(b)."

We reversed the trial judge, holding that it had been an abuse of discretion for him not to have granted the motion. We did not consider, and were not asked to consider, whether such a motion was even appropriate because it was based on the evidence produced at trial rather than upon a defect "on the face of the record," as was traditionally required for a Motion in Arrest of Judgment. The *Murphy* opinion, however, should not be construed as an expansion of what may be considered under Rule 4–331(b) because it was never called upon to give any thought to that admittedly subtle nuance of law. What we said in *Love v. State*, 95 Md.App. 420, 423, 621 A.2d 910 (1993) about a Motion for New Trial pursuant to Rule 4–331(a) is equally true about what is left of the Motion in Arrest of Judgment pursuant to Rule 4–331(b):

> Every conceivable wrong occurring in the course of a criminal trial does not necessarily give rise to a corresponding remedy. *A fortiori*, it does not always trigger the particular remedy invoked by the defendant who has arguably suffered the wrong. The Motion for New Trial is one of the post-trial remedies. It is by no means, however, a never-failing panacea, available whenever and however outraged justice may beckon. It is designed to correct some, but not all, flaws that may have marred a trial.

The defendant in *Murphy* should have raised the issue of the legal insufficiency of the evidence before the trial judge rendered his verdict and, if that availed him not, should have raised the issue on direct appeal. We are not countenancing the use of a post-trial motion to avoid those procedural neglects.

*Murphy v. State* did remain true to the traditional distinction that a Motion in Arrest of Judgment (even in its vestigial form as Rule 4–331(b)) is reviewable on the ground of abuse of discretion even though a discretionary ruling on a Motion for New Trial was not, at least historically, so reviewable.

In *Jones v. State*, 111 Md.App. at 463–87, 681 A.2d 1190, we affirmed the trial judge's refusal to set aside a verdict under Rule 4–331(b) on the ground that it violated the defendant's right not to be placed twice in jeopardy. In *Bates v. State*, 127 Md.App. at 692–700, 736 A.2d 407, we reversed a trial judge for refusing, under Md. Rule 4–331(b), to set aside an inconsistent verdict, where it was clear that the reason for the inconsistent verdict had been an erroneous jury instruction.[6]

We do note one subtle problem with respect to Rule 4–331(b). Because we seem to have lost sight of the historic pedigree of subsection (b) as the present-day descendant of the Motion in Arrest of Judgment, we similarly have lost or are rapidly losing sight of the historic limitation that such a Motion only permitted a verdict to be set aside for flaws that were apparent "on the record" as that term of art was traditionally understood. In *Murphy v. State*, we set aside a judgment because of the legal insufficiency of the evidence, a ground that was not historically cognizable on a Motion in Arrest of Judgment. In *Bates v. State*, to the extent to which our holding that verdicts were inconsistent was dependent on a jury instruction, we looked to a matter "extrinsic to the record," something that could not traditionally have been done on a Motion in Arrest of Judgment. The holding in *Jones v. State*, on the other hand, that a verdict offended the Double Jeopardy Clause dealt with an issue that would have been historically cognizable on the face of the record on a Motion in Arrest of Judgment.

### Subsection (c):
### Newly Discovered Evidence

We may also dispense with any further consideration of subsection (c). If timely discovered within ten days of a

---

6. In *Skok v. State*, 124 Md.App. 226, 241–44, 721 A.2d 259 (1998), we held that a defendant had not timely filed a motion to set aside a verdict under Rule 4–331(b) and that he had not exercised the due diligence required to invoke the "fraud, mistake, or irregularity" exemption from the filing requirement.

verdict, newly discovered evidence may be urged as one of the standard reasons for granting a new trial "in the interest of justice" under subsection (a). Prior to 1984, the filing deadline had been three days after the verdict. In 1965, the Court of Appeals concluded that that three-day filing deadline, under then Rule 759a, was far too austere to accommodate most instances of newly discovered evidence. Rather than touch Rule 759, however, the Court of Appeals amended Rule 764, dealing with the trial court's "revisory power," by providing, in new subsection 764b3, that a Motion for New Trial based on newly discovered evidence could be filed within 90 days (the filing deadline was extended to one year in 1978) after the imposition of sentence or the receipt of a mandate by either of Maryland's appellate courts. It is to be noted that the filing deadline for a regular New Trial Motion ran from the time of the verdict (it is basically a pre-sentence procedure) whereas the extended filing deadline provided for newly discovered evidence ran from the time of the imposition of sentence (it is, by definition, a post-sentence procedure).

■  Although the time constraints are different, there is no substantive difference between what is material and persuasive newly discovered evidence under subsection (c) and under subsection (a). Subsection (c) exists for the exclusive purpose of providing a more extended period of one year within which newly discovered evidence may be urged upon a trial judge as a reason for granting a new trial. Under subsection (c), however, it is strictly required not only that the evidence be newly discovered but that it be both 1) material and 2) evidence which "could not have been discovered by due diligence in time to move for a new trial pursuant to section (a)." *Love v. State*, 95 Md.App. at 428–29, 621 A.2d 910, observes with respect to this subsection:

This is a form of relief available over a far more extended period of time, one year rather than the ninety days available under subsection (b) or the ten days available under subsection (a). There is, moreover, the possibility of two triggering events—the imposition of sentence or the receipt of an appellate mandate—for the running of the one-year

clock, and a defendant is permitted to take advantage of the more favorable. This form of relief, on the other hand, rests upon a far more narrow substantive base.

. . .

Let it be carefully noted that the exclusive predicate for new trial relief under subsection (c) is not merely "newly discovered evidence." It is, rather, "newly discovered evidence which could not have been discovered by due diligence." Even if, for stylistic reasons, we occasionally resort to the convenient shorthand form of "new discovered evidence," it is nonetheless implicit that an indispensable part of the definitional predicate for this form of relief is the further and invariable *proviso:* "which could not have been discovered by due diligence."

The appellant's Motion for a New Trial in this case was not based on newly discovered evidence and subsection (c) has no bearing on the issue before us.

## Subsection (a):
## The Motion for a New Trial Generally

It is subsection (a) on which the appellant relies in this case. Although tightly constrained by the time limit that it must be filed "within 10 days after the verdict," there are no limits on the substantive content of what may be urged under subsection (a) as being "in the interest of justice." As *Love v. State,* 95 Md.App. at 427, 621 A.2d 910, commented:

> The list of possible grounds for the granting of a new trial by the trial judge within ten days of the verdict is virtually open-ended.

In *State v. Devers and Webster,* 260 Md. 360, 374, 272 A.2d 794 (1971), the Court of Appeals quoted from Hochheimer, *The Law of Crimes and Criminal Procedure* § 184 at 209–210 (2d ed.1904), in setting out an illustrative list of possible grounds:

> The principal grounds for granting a new trial are, that the verdict was contrary to the evidence; newly discovered

evidence; accident and surprise; misconduct of jurors or the officer having them in charge; bias and disqualification of jurors (disqualification not entitling to a new trial, however, if there was opportunity to challenge); misconduct or error of the judge; fraud or misconduct of the prosecution, *e.g.*, abuse of argument.

Since that decision in 1971, the grounds for a new trial under this subsection have, indeed, been further expanded. It was the holding of *State v. Devers and Webster* that a new trial could be granted on grounds of evidentiary insufficiency only in the case where the evidence was so legally insufficient, as a matter of law, that it could not, even if believed totally and given maximum weight, support the verdict. Since that time, the decision in the case of *In re Petition for Writ of Prohibition,* 312 Md. 280, 539 A.2d 664 (1988), has overruled that limiting provision of *State v. Devers and Webster* and empowered the trial judge to grant a new trial when the verdict, in the subjective opinion of the trial judge, is so against the weight of the evidence as to constitute a miscarriage of justice. *In re Petition for Writ of Prohibition,* 312 Md. at 326, 539 A.2d 664. That broader latitude is in keeping with the provision of subsection (a) that a judge may order a new trial "in the interest of justice."

### The Reconvergence of New Trial Motion Law In Criminal and Civil Cases

The principles of law controlling the granting of a Motion for New Trial in a criminal case (Rule 4–331)(a) and in a civil case (Rule 2–533) were always essentially indistinguishable. To be sure, there are in civil cases little wrinkles, such as a new trial with respect to damages but not as to liability, that are foreign to the criminal law, but in essential characteristics the two bodies of law were always veritable clones of each other.

Both were well recognized common law forms of post-trial relief. Neither was an appellate procedure concerned with objective rulings on questions of law; each, rather, was ad-

dressed to the subjective "gut feeling" of a trial judge that even an impeccably correct trial had somehow produced a badly flawed or unjust verdict. Each could be described, in the words of Judge Orth in *Devers and Webster v. State,* 9 Md.App. 366, 372, 264 A.2d 291 (1970), *rev'd on other grounds,* 260 Md. 360, 272 A.2d 794 (1971), as:

> *the safety valve* as to improper verdicts which is established by the rule as to new trials and which is a *raison d'etre* in giving trial courts discretionary power as to the grant of a new trial.

(Emphasis supplied).

For that very reason, the trial judge's discretionary decision to open or not to open the "safety valve," in criminal and civil cases alike, was historically always considered absolutely unappealable except for the rare case where the trial judge had failed even to exercise discretion. Both the criminal motion and the civil motion were subject to the same filing deadlines. Both motions were open-ended with respect to the reasons which the trial judge in his discretion could consider. Both motions circumscribed newly discovered evidence with the same stern requirements of materiality and due diligence. Appellate opinions in criminal cases routinely cited civil cases as controlling authority. *Mack v. State,* 300 Md. 583, 479 A.2d 1344 (1984); *Pinkney v. State,* 9 Md.App. 283, 291–92, 263 A.2d 871 (1970). Conversely, civil opinions routinely cited criminal cases as controlling authority. *Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. 51, 612 A.2d 1294 (1992).

It was a jolting aberration, therefore, when *State v. Devers and Webster,* 260 Md. 360, 380, 272 A.2d 794 (1971), suddenly announced:

> *The granting of a motion for a new trial in a civil case cannot be analogized,* however, for there, the trial judge may weigh the evidence to determine whether the verdict is determined by a preponderance of the evidence.

(Emphasis supplied).

It had commonly been thought theretofore that a trial judge had the discretion, in criminal and civil cases alike, to grant a

new trial not because of the literal legal insufficiency of the evidence but, rather, because he felt that the weight of the evidence heavily preponderated against a legally correct but nonetheless unjust verdict. It was the holding of *Devers and Webster*, however, that although that greater discretionary latitude remained available to a judge in a civil case, it was not available to a judge in a criminal case. He was limited to ruling that the evidence was, as a matter of law, legally insufficient to support the verdict. On the civil side, that would not have been a basis for a Motion for New Trial under what is now Rule 2–533 but would, instead, have been the basis for a Judgment Notwithstanding the Verdict under what is now Rule 2–532.

In that significant regard, the criminal practice and the civil practice diverged from each other for the next seventeen years. More broadly, there was a general sense of uneasiness that the criminal-civil analogy lacked a firm foundation, as that single divisive sentence from *Devers and Webster* was regularly repeated. The seventeen-year estrangement came to an end, however, in 1988 when *In re Petition for Writ of Prohibition*, 312 Md. 280, 539 A.2d 664 (1988), overruled *Devers and Webster* and restored the criminal practice to the track it had traditionally shared with civil practice.

Judge Adkins, 312 Md. at 312–13, 539 A.2d 664, pointed out how raising the issue of literal legal insufficiency on a Motion for New Trial is redundant and, therefore, unnecessary:

> *[W]hy even allow evidentiary lack to be raised in a motion for new trial in a criminal case? Rule 4–324 provides for court review of sufficiency of the evidence on motion for judgment of acquittal. If sufficiency has been reviewed pursuant to a Rule 4–324 motion, need the very same question be reviewed again on a motion for a new trial pursuant to Rule 4–331? The second stage of review hardly seems necessary,* unless the ability to raise the issue by way of motion for new trial is intended to permit a defendant to argue sufficiency (and to raise it on appeal) even though that defendant has not preserved the issue by taking the.

action required under Rule 4–324. That hardly seems likely.

(Emphasis supplied; citations omitted). He went on to explain, 312 Md. at 313, 539 A.2d 664, how granting a new trial on the ground that the evidence was legally insufficient would be an absurd contradiction in terms:

> Moreover, insufficiency of the evidence is today a singularly inappropriate basis for ordering a new trial, because *if the evidence was insufficient* to go to the jury in the first place, *double jeopardy principles preclude a new trial.*

(Emphasis supplied). Self-evidently, one cannot award a new trial for a reason that demonstrably would not permit a new trial. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Mackall v. State,* 283 Md. 100, 387 A.2d 762 (1978).

Judge Adkins, 312 Md. at 325, 539 A.2d 664, then articulately contrasted the phenomenon of 1) legal insufficiency with that of 2) being against the weight of the evidence:

> [T]here is a difference between a motion for judgment of acquittal and a motion for new trial based on weight of the evidence. The former, if granted, results in acquittal and the proper test is sufficiency of the evidence to convict. Weight and credibility are not at issue. The evidence must be read from the viewpoint most favorable to the prosecution and if so read any rational fact-finder would find it sufficient, the motion must be denied. The latter, if granted, results only in a new trial. As a consequence, a court has more latitude in considering it, and may take into account factors such as credibility. To conclude otherwise is to make the two types of motions essentially indistinguishable when the issue is the extent of evidence presented to the trier of fact.

In the criminal and the civil cases alike, the trial judge may now grant a new trial if he feels that the great weight of the evidence strongly preponderates against the verdict. The civil

cases are once again reliable analogues for resolving criminal New–Trial–Motion questions and vice versa.

## Reviewability in Flux

A threshold issue before us is whether we may even undertake a review of the trial judge's denial of the appellant's Motion for New Trial. As we look at the matrix of possible rulings that could emanate from Rule 4–331, there is no sure and simple answer to the appealability/reviewability issue.

Although, as we shall discuss, there is a real question as to whether review is appropriate of a trial judge's actual exercise of discretion pursuant to subsection (a) or (c), there is no disputing that the granting or denying of a motion to set aside a verdict pursuant to subsection (b) is reviewable. Subsection (b) is what presently remains of the venerable Motion in Arrest of Judgment and a trial judge's ruling on that motion was always reviewable under the abuse of discretion standard. *Quesenbury v. State,* 183 Md. 570, 572, 39 A.2d 685 (1944)("It is . . . thoroughly settled that . . . *a motion to strike out a judgment,* as distinguished from a motion for a new trial, *is appealable.*")(Emphasis supplied); *Duker v. State,* 162 Md. 546, 549, 160 A. 279 (1932)("A motion to strike out a sentence or judgment is a permitted proceeding, and *an appeal to this Court lies from an order overruling such a motion.*")(Emphasis supplied); *Margulies v. State,* 153 Md. 204, 212, 137 A. 896 (1927)("[T]he action of the trial court on the [motion to strike out the verdict and judgment] should not be disturbed unless the discretion of the court was abused."); *Miller v. State,* 135 Md. 379, 382, 109 A. 104 (1919)("It is difficult to see in any case which has been fully tried on its merits the difference between *a motion to strike out a judgment* and a motion for a new trial, except *from the refusal to grant the former an appeal may be entertained,* and not, in this State, from such refusal as to the latter.")(Emphasis supplied); *Dutton v. State,* 123 Md. 373, 378, 91 A. 417 (1914)("That the action of the Court in overruling the motion for a new trial is not subject to review by us is too well settled to require or justify the citation of authorities, but *its action*

*on the motion to strike out the judgment and sentence is reviewable by us.*")(Emphasis supplied); *Hommer v. State,* 85 Md. 562, 37 A. 26 (1897). *And see Murphy v. State,* 100 Md.App. 131, 640 A.2d 230 (1994).

## No Immediate Appeal
## If A New Trial Is Granted

■ Another procedural pitfall to be aware of when considering appealability/reviewability is to appreciate that when a trial judge **grants**, as opposed to **denies**, a post-trial motion, criminal or civil, under any of the provisions of Rule 4–331, there is no immediate appeal. That is for what should be the obvious reason that there is yet no final judgment. *In re Petition for Writ of Prohibition,* 312 Md. 280, 282–83, 539 A.2d 664 (1988); *Dean v. State,* 302 Md. 493, 499–500, 489 A.2d 22 (1985); *Snyder v. Cearfoss,* 186 Md. 360, 366–67, 46 A.2d 607 (1946)("There has been no final judgment, and until final judgment the appeal is premature. . . . It is generally recognized that the effect of granting a motion for a new trial is to leave the cause in the same condition as if no previous trial had been held.")

■ Once the new trial has been held, however, the earlier decision to grant the new trial, to the extent it is appealable at all, is ripe for appellate review on the appeal then taken from the ultimate judgment at that new trial. *Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. 51, 54, 612 A.2d 1294 (1992).

## The Dubious Reviewability
## Of An Exercise of Discretion

What is presently in flux is the issue of whether a trial judge's actual exercise of discretion to deny or to grant a new trial under subsections (a) or (c), as opposed to his non-exercise of discretion, is ever reviewable, no matter how compelling the circumstances. The settled Maryland law until 1983 was that the actual exercise of discretion on a Motion for

New Trial was absolutely unreviewable. Since 1983, however, that granite-like principle of unreviewability has been undergoing serious erosion.

The erosive forces, however, have not been conscious and advertent decisions by rule makers or appellate judges to change the theretofore existing law. The erosion, rather, has been the product of slack and careless language in some appellate opinions and then of the cursory and uninformed misreading of such language.

### The Non–Exercise of Discretion
### Versus the Abuse of Discretion

As is frequently the case, legal problems can turn out to be primarily linguistic problems. The current problem is that the term "abuse of discretion" has been applied to two very different circumstances in the context of post-trial motions and no clear distinction between the two uses has been maintained. In looking at the denial by a trial judge of a Motion in Arrest of Judgment, appellate courts used the "abuse of discretion" standard to appraise the trial judge's actual exercise of discretion. In the distinct context of reviewing denials of a Motion for a New Trial, however, the term of art "abuse of discretion" referred only to those rare cases where the trial judge failed to exercise discretion at all and not to any arguably erroneous discretionary ruling.

When an appellate court holds, therefore, that a trial judge has not abused his discretion in denying a Motion for a New Trial, it is deceptively easy to infer that the appellate court has, indeed, reviewed the judge's actual exercise of discretion and found it to be not wanting, whereas all the appellate court may have really done was to find that the judge had not failed to exercise discretion in the first instance. From such a subtle misreading of what actually was decided, it is easy to conclude that all denials of a Motion for a New Trial are not only appealable but also reviewable in all of their aspects, whereas the settled law has always been that the merit-oriented sub-issues are absolutely unreviewable.

## Historic Unreviewability

The Maryland law on the absolute unreviewability of a trial judge's discretionary decision to deny or to grant a new trial was, for over a century and a half, never in doubt. *Anderson v. State,* 5 H. & J. 174, 175 (1821), held:

[W]e are decidedly of opinion, that the refusal of an inferior Court to grant a new trial cannot be assigned for error. *The Marine Insurance Company v. Hodgson,* 6 *Cranch [206],* 218 [3 L.Ed. 200]. The law has been considered as settled in this country beyond all controversy; and no case can be found in England where a superior tribunal, acting on the transcript of the record, or the record itself, brought before them by a writ of error, has entertained such a question.

In *Archer v. State,* 45 Md. 457, 461 (1876), the Court of Appeals similarly held:

[T]he ruling of the Circuit Court upon the motion for a new trial not being subject to review by this Court, this appeal, so far as that motion is concerned, must be dismissed.

In *Stern v. Bennington,* 100 Md. 344, 349, 60 A. 17 (1905), Chief Judge McSherry was equally emphatic in holding:

The motion asking the lower court to vacate the verdict was a motion for a new trial, and from a ruling on that motion no appeal will lie to this Court. This is so fully settled as the law of Maryland that we would not be justified in further discussing it.

*See also Chiswell v. Nichols,* 139 Md. 442, 444, 115 A. 790 (1921).

In *Williams v. State,* 204 Md. 55, 66–67, 102 A.2d 714 (1954), Chief Judge Sobeloff spoke for the Court:

[T]his Court does not entertain appeals from rulings on motions for new trial ... In this State a motion for a new trial is addressed to the discretion of the Court in criminal as well as civil cases, and from an order overruling such a motion no appeal will lie.

2 Poe, *Pleadings and Practice* § 349 (Tiffany's ed., 1925) similarly observed:

> Motions for a new trial are addressed to the sound discretion of the court, and from its action in granting or refusing them, whether absolutely or on terms, no appeal will lie.

In *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 55, 612 A.2d 1294 (1992), Judge McAuliffe meticulously collected a representative group of similar Maryland appellate holdings covering the century from 1827 through 1924:

> *See also Griffith v. Benzinger*, 144 Md. 575, 597, 125 A. 512 (1924)("the action of a trial court in granting or refusing a new trial is within the discretion of such court and will not be reviewed on appeal"); *Washington & R. Rwy. Co. v. Sullivan*, 136 Md. 202, 211, 110 A. 478 (1920)("granting or refusing a new trial is a matter resting in the discretion of a trial Court, and its action thereupon is not the subject matter of review upon appeal to this Court"); *Whitcomb v. Mason*, 102 Md. 275, 285, 62 A. 749 (1905)("It is well settled that no appeal will lie from an order granting or refusing a new trial motion for which is always addressed to the sound discretion of the Court."); *Sittig v. Birkestack*, 38 Md. 158, 166 (1873)("No appeal lies from the refusal to grant a new trial, that being a matter which in Maryland, rests exclusively in the discretion of the court below.")' *Baltimore v. Reynolds*, 18 Md. 270, 273 (1862)(granting of new trial unless remitted or filed is an action within the discretion of the lower court, and cannot be reviewed on appeal); *Wall v. Wall*, 2 H. & G. 79, 81 (1827)("where the subject decided by the inferior Court is left by law to their discretion, as in the refusal to grant a new trial, it has been adjudged that a writ of error will not lie").

That well recognized principle of unreviewability of the actual exercise of discretion was invariably recognized in the criminal cases as well as in the civil cases. *White v. State*, 143 Md. 535, 540, 123 A. 58 (1923); *Myers v. State*, 137 Md. 482, 487–88, 113 A. 87 (1921)("It is well settled that no appeal lies

from the action of the court in overruling a motion for new trial for the reason that such a motion is addressed to the discretion of the court, and its exercise of that discretion is not reviewable on appeal.") (Citations omitted); *Miller v. State,* 135 Md. 379, 382, 109 A. 104 (1919)("It is difficult to see in any case which has been fully tried on its merits the difference between a motion to strike out a judgment and a motion for a new trial except from the refusal to grant the former an appeal may be entertained, but not, in this State, from such a refusal as to the latter.")

With respect to the unavailability of review from a trial judge's actual exercise of discretion on a Motion for New Trial in a civil case, the case law continued to speak in absolute terms. *Hartlove v. E. & H. Bottling Co.,* 160 Md. 507, 509–10, 153 A. 850 (1931); *Von Schlegell v. Ford,* 167 Md. 584, 593–94, 175 A. 589 (1934)("It is undoubtedly true that the power of the trial court to grant a new trial to correct what is clearly an unjust and unwarranted verdict is a useful, indeed an essential, adjunct of the common law system of jury trial, and that the failure of such a court to exercise that power wisely and fearlessly in appropriate cases impairs the usefulness of that system and tends to bring it into disrepute, but, notwithstanding that obvious truth, it has long been settled law in this State that the exercise of the discretion implicit in the power will not be reviewed by this Court."); *Lynch v. Baltimore,* 169 Md. 623, 633–34, 182 A. 582 (1936)("[S]ince the case of the trial court in granting or refusing a motion for a new trial is entirely discretionary, no appeal lies therefrom."); *Riley v. Naylor,* 179 Md. 1, 9, 16 A.2d 857 (1940)("The action of the trial court in the exercise of this authority is not assignable as error on appeal."); *Snyder v. Cearfoss,* 186 Md. 360, 366–69, 46 A.2d 607 (1946); ("The Rule is well settled in this State that the action of a trial court in granting or refusing a motion for a new trial is not appealable."); *B.J. Linthicum's Sons v. Stack,* 213 Md. 344, 346–47, 131 A.2d 721 (1957)("It is well settled that this Court cannot review the ruling of a trial court on a motion for a new trial."); *Hill v. Coleman,* 218 Md. 1, 2, 144 A.2d 694 (1958); *Congressional School of Aeronautics,*

*Inc. v. State Roads Comm'n,* 218 Md. 236, 254, 146 A.2d 558 (1958).

The ranks of the cases holding that no review will lie from the actual exercise of discretion on a Motion for New Trial in a criminal case are similarly unbroken. *Margulies v. State,* 153 Md. 204, 210–13, 137 A. 896 (1927); *Bosco v. State,* 157 Md. 407, 410, 146 A. 238 (1929)("[N]o appeal lies from the action of the trial court in overruling a motion for a new trial."); *Wilson v. State,* 181 Md. 1, 8, 26 A.2d 770 (1942)("It is well settled that the grant or refusal of a motion for a new trial is discretionary with the trial court in criminal as well as civil cases, and from an order overruling such a motion no appeal will lie."); *Quesenbury v. State,* 183 Md. 570, 572, 39 A.2d 685 (1944)("It is elementary that the ruling of the trial court on such a motion is not appealable."); *Newton v. State,* 193 Md. 200, 202, 66 A.2d 473 (1949)("We have repeatedly held that a ruling upon motion for a new trial is not reviewable."); *Haley v. State,* 200 Md. 72, 77, 88 A.2d 312 (1952)("[T]here is no appeal to this Court from the refusal of a new trial."); *Auchincloss v. State,* 200 Md. 310, 316, 89 A.2d 605 (1952)("[I]t has long been established in Maryland that when the motion has been heard on the merits the granting or refusal of such a motion is not reviewable."); *Madison v. State,* 205 Md. 425, 433, 109 A.2d 96 (1954)("It is a similarly established rule in Maryland that the action of a trial court in overruling a motion for a new trial is not reviewable by the Court of Appeals."); *Givner v. State,* 208 Md. 1, 4–8, 115 A.2d 714 (1955); *Hitchcock v. State,* 213 Md. 273, 285, 131 A.2d 714 (1957); *Thomas v. State,* 215 Md. 558, 561, 138 A.2d 878 (1958)("No appeal lies from the refusal to grant a new trial, and this Court will not review the action of the trial court in this respect since it is based on the exercise of his discretion.")

In the face of this Macedonian phalanx of unswerving authority, it is mind-boggling that an appellate opinion, absent an express change by amendment to the Maryland Rules or by deliberate appellate decision, could think the law as to reviewability was other than it has always been. The question for us, then, is whether there has been any conscious and

deliberate decision, by rule makers or appellate courts, to overturn this venerable body of legal precedent. The question is not whether there may have been inadvertent linguistic lapses from a full appreciation of that precedent (there have been), but has there been a knowledgeable and advertent decision to overturn that authority. There has not! slippage perhaps, but advertent change, no.

### The Non–Exercise of Discretion
### As An Issue Completely Distinct
### From An Abuse in the Exercise of Discretion

There is a clear explanation, moreover, for the inadvertent slippage that has occurred. When considering the reviewability of a trial judge's granting or denying of a Motion for New Trial, the Court of Appeals, from as early as 1864, recognized a critical distinction between 1) a trial judge's actual exercise of discretion, which always had been and remained unreviewable; and 2) the trial judge's failure to exercise that discretion, sometimes manifested by his refusal even to consider the evidence on which the motion was based. In *Browne v. Browne*, 22 Md. 103 (1864), the appellant argued that his Motion for New Trial, based on affidavits of jury misconduct, was erroneously denied. The appellee countered that the appeal from the refusal to grant a new trial was not properly before the Court and should be dismissed. In refusing to dismiss the appeal (the refusal to grant the new trial, however, was subsequently affirmed), the Court of Appeals, 22 Md. at 112, distinguished between the actual exercise of discretion and the non-exercise of discretion:

> *[F]rom the refusal* of the Judge of the Superior Court *to grant a new trial,* it being matter within his discretion, *no appeal would lie; provided that discretion had been exercised* after hearing the evidence; but *it is argued that the refusal to admit the evidence* offered in support of the motion, *was error in law, from which an appeal lies; because thereby the appellant was deprived of the exercise of the judgment and discretion of the court* upon the case as

presented by the proof, *to which he had a legal right.* This is certainly a very nice distinction, but we are not prepared to say it may not be a sound one, and in some cases material to be observed.

(Emphasis supplied).

The logic of the distinction emanates from the essential nature of a Motion for New Trial. A Motion for New Trial is an alternative form of relief and not a mere preliminary for a second round of appellate issues. Because a Motion for New Trial is addressed exclusively to the subjective "sense of justice" of the trial court, it is, by its very nature, not subject to second-guessing by an appellate court.[7] On the other hand, a litigant is entitled, as a matter of law, to have the trial court at least entertain the Motion for New Trial. A denial of that legal right is properly a matter for objective appellate review. The distinction is between **HOW** a trial judge's discretion is exercised, which is unappealable, and **WHETHER** a trial judge's discretion is exercised, a matter which is appealable.

The seminal decision which both 1) recognized the exception to the non-reviewability principle and 2) limited that exception to cases where discretion had not been exercised was *Washington, Baltimore & Annapolis Railroad Co. v. Kimmey,* 141

---

**7.** Perhaps the best explanation of why a trial judge's actual exercise of discretion is, by its very nature, unreviewable, is that provided by the Court of Appeals in *State, to the Use of Scruggs v. Baltimore Transit Co.,* 177 Md. 451, 454, 9 A.2d 753 (1939):

[T]he general rule in Maryland is that an appeal does not lie from the order of the trial court in disposing of a motion for a new trial, as the determination of the court is in the exercise of a sound discretion. The discretionary power so reposed is a high prerogative to be exercised for the purpose of assuring a sound, correct, and impartial judicial trial.... Since *the remedy is not of right,* the combination of power and personal responsibility reposed in the trial court tends to assure careful consideration and a justified determination. The benefits contemplated by the remedy would be largely frustrated if the procedure became dependent upon a compliance with artificial and technical pleadings and practice and evidence, which would become questions on appeal; and, so, *the aggrieved party is generally entitled to no more than an opportunity to a court and a hearing.*
(Emphasis supplied).

Md. 243, 118 A. 648 (1922). The appellant there based its Motion for New Trial on newly discovered evidence which undercut the plaintiff's proof of injury. The trial judge refused to admit and to consider the newly discovered evidence. In reviewing and reversing the denial of a new trial, the Court of Appeals, 141 Md. at 250, 118 A. 648, first stated the general rule that "the disposition of a Motion for a New Trial is within the sound discretion of the trial court and is not a subject of appeal," and then stated the limited exception for a case where discretion is not exercised:

> *The exception* now under consideration, however, *is not directed to the action of the court in overruling the motion* for a new trial, *but to its exclusion of evidence* by which its judgment and discretion in regard to the motion should properly have been influenced. *The defendant was entitled to the exercise of a sound discretion in the disposition of its motion. A discretion could not be characterized as sound which wholly disregarded evidence* by which its exercise should have been aided.

(Emphasis supplied).

The *Wash., B. & A.R. Co. v. Kimmey* opinion then cited and quoted with approval from *Browne v. Browne, supra.* It also quoted with approval, 141 Md. at 251, 118 A. 648, the opinion of the Supreme Court in *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892):

> In *Mattox v. United States,* 146 U.S. 140 [13 S.Ct. 50, 36 L.Ed. 917], the Supreme Court, in ruling upon an exception to the exclusion of certain affidavits offered in support of a motion for a new trial, said: "The allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, and the result cannot be made the subject of review by writ of error, but in the case at bar *the District Court excluded the affidavits, and,* in passing upon the motion, *did not exercise any discretion in respect of the matters stated therein.".*

(Emphasis supplied). The *Wash., B. & A.R. Co. v. Kimmey* opinion relied, in explaining the limited exception, on *Corpus Juris:*

> In 3 *C.J.* 471, it is said: *"The rule* that a discretionary ruling is not reviewable on appeal *does not apply where the decision complained of was not made in the exercise of discretion,* but was based upon a question of power in the court below, or upon some ground of law not involving discretion."

(Emphasis supplied). The Court of Appeals concluded, "[T]he defendant in this case had a right to have the Court consider the depositions filed in support of its motion." 141 Md. at 251, 118 A. 648.

For decades, the Maryland case law recognized that the only limited exemption from non-reviewability of a new trial decision was in those cases where there had been "a denial of the right [of] review." The Court of Appeals stated clearly in *State, to the Use of Scruggs v. Baltimore Transit Co.,* 177 Md. 451, 454–55, 9 A.2d 753 (1939):

> *It is only where the action of the court* has in fact denied to the party some substantial right, which goes not to form, but *[a]mounts to a denial of the right, that · a review is entertained on appeal.* The appeal in the case of *Washington, B. & A.E.R. Co. v. Kimmey* exemplifies this point. In that decision, the trial court had, by its action on a motion of *ne recipiatur,* refused, in effect, to entertain the motion for a new trial. Here no such course was pursued. Since nothing is found to have been done in the case at bar which was not in the exercise of the sound discretion of the court, *the appeals will be dismissed.*

(Citations omitted; emphasis supplied). Significantly, the Court of Appeals in that case dismissed the appeal.

In *Snyder v. Cearfoss,* 186 Md. 360, 46 A.2d 607 (1946), the Court of Appeals reaffirmed the unreviewability of any actual exercise of discretion and . summarized the *Kimmey* and *Scruggs* opinions as standing for a limited exemption in the case where discretion is not exercised. It pointed out, 186

Md. at 368, 46 A.2d 607, that the "alleged abuse of discretion in this case *is not the refusal of the Court to consider evidence,* but the exercise of its power to set aside the verdicts," (emphasis supplied) and declined further to consider the merits of the refusal to grant a new trial.

In *B.J. Linthicum's Sons v. Stack,* 213 Md. 344, 346–47, 131 A.2d 721 (1957), the Court of Appeals reaffirmed that the non-exercise of discretion, as in the *Kimmey* case, was the only known exception to the non-reviewability principle:

> It is well settled that this Court cannot review the ruling of a trial court on a motion for a new trial. *The only exception to the rule that appears in the adjudicated cases is where the trial court refused to even consider newly discovered evidence,* and this was dealt with as an abuse of discretion. See *Wash., B. & A.R. Co. v. Kimmey,* 141 Md. 243 [118 A. 648].

(Citation omitted; emphasis supplied). *See also Kirkpatrick v. Zimmerman,* 257 Md. 215, 262 A.2d 531 (1970); *Grabner v. Battle,* 256 Md. 514, 517–19, 260 A.2d 634 (1970).

In the criminal cases as well as the civil ones, reviewability of a trial judge's decision on the new trial issue was carefully limited to those cases where discretion was not actually exercised. *Givner v. State,* 208 Md. 1, 6, 115 A.2d 714 (1955), thoroughly reviewed the *Kimmey* decision, found that in the case before it there had been no "refusal to receive and consider evidence supplied by affidavit," 208 Md. at 6, 115 A.2d 714, and dismissed the appeal:

> [T]here is no right of appeal from its judgment. It follows that the motion to dismiss the appeal must be granted.

208 Md. at 8, 115 A.2d 714.

In *Thomas v. State,* 215 Md. 558, 561, 138 A.2d 878 (1958), the Court of Appeals, having concluded that the trial judge "gave full consideration to the relevant facts," further concluded that there was, therefore, "nothing . . . in this aspect of the case for us to pass on."

In *Burley v. State,* 239 Md. 342, 344, 211 A.2d 714 (1965), the Court of Appeals recognized non-exercise of discretion under *Kimmey* as the only exception to the general rule:

> We recognized an exception to the general rule where the trial court refused even to consider newly discovered evidence relating to a motion for a new trial. *Wash., B. & A.R. Co. v. Kimmey,* 141 Md. 243 [118 A. 648]. The instant case comes within the purview of the general rule.

Declining to extend abuse-of-discretion review to an actual exercise of discretion, the Court of Appeals dismissed the appeal.

From its second year of operation, this Court also recognized that the only exception to the unreviewability principle was in the case where the judge ruling on a Motion for a New Trial failed even to exercise discretion. In *Adams v. State,* 4 Md.App. 135, 140, 241 A.2d 591 (1968), we held:

> *The Court recognized an exception to the general rule where the trial court refused even to consider newly discovered evidence relating to a motion for a new trial. Burley v. State,* 239 Md. 342, 344 [211 A.2d 714]. But we think it clear from the record before us in the instant case that *the trial court,* in denying the motion for a new trial *did consider the evidence* proffered *and thus the instant case comes within the purview of the general rule.*

(Citation and footnote omitted; emphasis supplied).

In *Angell v. Just,* 22 Md.App. 43, 321 A.2d 830 (1974), we reversed a trial judge's denial of a Motion for New Trial. Citing and quoting from *Wash., B. & A.R. Co. v. Kimmey,* we concluded, 22 Md.App. at 56, 321 A.2d 830, that the trial judge's "denial of an opportunity for appellant ... to present newly discovered evidence" constituted "an abuse of discretion." And *cf. Gunning v. State,* 347 Md. 332, 351–52, 701 A.2d 374 (1997); *Diaz v. State,* 129 Md.App. 51, 740 A.2d 81 (1999).

### Ostensible Erosion or "Confusion" Where None Truly Existed

If the current state of the law with respect to the reviewability of a trial judge's actual exercise of discretion in granting or denying a new trial is, as it unfortunately appears to be, in a state of flux, if not indeed in a state of error, a heavy responsibility must be borne by the opinion in *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 612 A.2d 1294 (1992). After a scrupulously complete and impeccably accurate summary of a century and a half of law establishing the absolute unreviewability of the exercise of discretion, the opinion, 328 Md. at 56–57, 612 A.2d 1294, purported to recognize a series of "qualifications" that had ostensibly been creeping into the theretofore absolute law of unreviewability.

It cited six cases for the development of the qualifying language and deduced from "the sometimes confusing use of language in the past" an uncertainty in the law that did not truly exist. Far from qualifying the rule as to the unreviewability of the actual use of discretion, however, those cases did nothing more than recognize the limited exemption, illustrated by *Wash., B. & A.R. Co. v. Kimmey*, for the case where there had been a non-exercise of discretion.

The *Buck v. Cam's Broadloom Rugs, Inc.* opinion, 328 Md. at 56, 612 A.2d 1294, looked first to *Leizear v. Butler*, 226 Md. 171, 178, 172 A.2d 518 (1961) as having stated the rule "with a qualification," when *Leizear v. Butler* stated:

> [W]e find it firmly established in Maryland that whether the claim be of excessiveness or inadequacy the action of the trial court in allowing or refusing a new trial will **rarely, if ever,** be reviewed on appeal.

(Emphasis supplied). A thorough reading of *Leizear v. Butler* will not support reading any erosive or qualifying significance into such a random turn of phrase. In the very next sentence, *Leizear v. Butler* cites first *Chiswell v. Nichols*, 139 Md. 442, 443, 115 A. 790 (1921), and then 2 Poe *Pleadings and Practice* (Tiffany's ed., 1925), § 349, for the proposition that from the

granting or refusing of motions for new trial, "no appeal will lie." It goes on to cite *Baltimore & Ohio R. Co. v. Brydon*, 65 Md. 198, 222, 9 A. 126 (1886), for the principle that a Motion for a New Trial is addressed exclusively to the trial court and "with that, this Court has nothing to do." It then quoted with approval *Riley v. Naylor*, 179 Md. 1, 9, 16 A.2d 857 (1940), for the proposition:

> After a verdict is rendered, the court has the discretionary power to set aside the verdict and grant a new trial, if in the interest of justice. *The action of the trial court in the exercise of this authority is not assignable as error on appeal.*

(Emphasis supplied). *Leizear v. Butler* did not in any way erode. the absolute unreviewability of the exercise of discretion.

In then turning to *Brinand v. Denzik*, 226 Md. 287, 292, 173 A.2d 203 (1961), the *Buck v. Cam's Rugs* opinion selectively lifted a sentence completely out of its context. It looked to *Brinand v. Denzik*'s statement that "the general rule that a motion for a new trial was within the sound discretion of the trial court and its ruling is **ordinarily** not reviewable on appeal," (emphasis supplied), as an apparent indication that such rulings are sometimes reviewable. In fuller context, however, the very next sentence of the *Brinand v. Denzik* opinion makes it clear that *Kimmey*'s non-exercise of discretion is the "extraordinary" situation that is the only exception to the "ordinary" rule:

> Appellant recognizes the general rule that a motion for a new trial is within the sound discretion of the trial court and its ruling is ordinarily not reviewable on appeal. *She argues,* however, *that the trial court abused its discretion* in denying the motion *on the ground that the court's alleged failure to give due weight to the jury's tabulation of damages in reality amounted to a failure to exercise discretion at all,* as in *Wash., B. & A.R. Co. v. Kimmey, where the trial court refused to consider evidence offered in support of a motion for a new trial, and thus, in effect, refused even to entertain the motion.*

226 Md. at 292, 173 A.2d 203 (citation omitted; emphasis supplied). There is nothing in *Brinand v. Denzik* that remotely suggests that there might ever be a review of the actual exercise of discretion.

*Buck v. Cam's Rugs* then quotes a single sentence from *Martin v. Rossignol,* 226 Md. 363, 366–67, 174 A.2d 149 (1961):

> It is well settled that the denial of a motion for a new trial is not appealable, at least where the trial court fairly exercises its discretion.

In the *Martin v. Rossignol* case itself, the decision of *B.J. Linthicum's Sons v. Stack,* 213 Md. at 344, 347, 131 A.2d 721 (1957), is immediately cited as authority for that proposition and the *B.J. Linthicum's Sons* case, at the place cited, makes it clear that the non-exercise of discretion under *Wash., B. & A.R. Co. v. Kimmey* is the "only exception to the rule that appears in the adjudicated cases."

The *Buck v. Cam's Rugs* opinion then quotes from *Carlile v. Two Guys,* 264 Md. 475, 477, 287 A.2d 31 (1972) for its statement that "a trial judge's granting or refusing a new trial ... is not reviewable on appeal **except under the most extraordinary or compelling circumstances.**" (Emphasis supplied). The suggestion seems to be that even the exercise of discretion might be reviewable on appeal under "extraordinary or compelling circumstances."

That is by no means what Judge Digges said for the Court of Appeals, however, in the *Carlile* opinion itself. He first referred, 264 Md. at 477–78, 287 A.2d 31, to the general principle that the exercise of discretion is unreviewable:

> There is probably no principle of law that rests on more decisions of this Court than the concept that a trial judge's granting or refusing a new trial—fully, partially, conditionally, or otherwise—is not reviewable on appeal except under the most extraordinary or compelling circumstances. This is true even though the trial judge's decision is based on mistake or erroneous conclusions of law or fact. Our adherence to this rule is unwavering and we do not find any extraordinary or compelling circumstances in the present

case *which would permit a review.* In fact, this Court, in its long history, has never found such circumstances to exist.

(Emphasis supplied). Significantly, "extraordinary or compelling circumstances" were considered not as the predicate for a decision on the merits but as the threshold necessary even to "permit a review." Judge Digges then austerely limited the exceptional circumstances that might qualify as "extraordinary or compelling" and they clearly did not apply to any actual exercise of discretion:

> The only exceptions to this statement (if they can be termed exceptions) are: *when the action of the trial court was in effect a refusal to even entertain or consider a motion for a new trial, Wash. B. & A.R. Co. v. Kimmey,* 141 Md. 243, 250, 118 A. 648 (1922); or when the trial court, in dealing with such a motion, exceeded its jurisdiction, *Brawner v. Hooper,* 151 Md. 579, 135 A. 420 (1926).[8]

(Emphasis supplied).

The *Buck v. Cam's Rugs* opinion goes on to cite *A.S. Abell Co. v. Skeen,* 265 Md. 53, 59, 288 A.2d 596 (1972), as standing

---

8. It does appear that *Brawner v. Hooper* may have created an additional, albeit rarely applicable, exception to the rule of unreviewability. Following a verdict in favor of the plaintiff and a Motion for a New Trial, the trial judge indicated that he would grant the Motion for a New Trial unless the plaintiff agreed to a *Remittitur.* The Court of Appeals agreed that that was proper. The trial judge further indicated, however, that he would cancel and rescind the *Remittitur* and deny the Motion for a New Trial unless the defendant agreed to abandon any possible appeal. The Court of Appeals held that in attaching such a condition to its ruling on a new trial motion, "the Court exceeded its jurisdiction." The Court of Appeals reversed the judgment.

By logical extension, if a trial court entertains a Motion for New Trial that has not been timely filed, that also might well be deemed a case where the Court "exceeded its jurisdiction." It, unlike the actual exercise of discretion, would clearly appear to be a reviewable matter. In a criminal case, at least, the issue of a trial court's exceeding of its jurisdiction in entertaining an untimely filed Motion for a New Trial would have a difficult time making its way up to appellate review. If the trial court awarded a new trial, there would yet be no final judgment for the State to appeal. If upon the new trial the defendant prevailed, the State would be barred by the Double Jeopardy Clause

for the same proposition as *Carlile v. Two Guys*. Indeed, it does and it is subject to precisely the same limitation. As *Abell* clearly points out, 265 Md. at 59–60, 288 A.2d 596:

> Recently, in *Carlile v. Two Guys from Harrison*, we stated that "a trial judge's granting or refusing a new trial—fully, partially, conditionally, or otherwise—is not reviewable on appeal except under the most extraordinary or compelling circumstances." *One of the rare exceptions to this general rule was found to exist in Wash., B. & A.R. Co. v. Kimmey, where the trial judge, in effect, refused to even consider a motion for a new trial.* The record there reflected the circumstances surrounding the ruling and consequently this Court reviewed that refusal. Here, the record discloses *nothing upon which we can act.*

(Emphasis supplied). The Court there did not review any actual exercise of discretion. Finding no failure on the part of the trial judge to **exercise** discretion in the first place, it concluded that "the record discloses **nothing upon which we can act.**" (Emphasis supplied).

The *Buck v. Cam's Rugs* opinion cites *Estep v. Estep*, 285 Md. 416, 421 n. 5, 404 A.2d 1040 (1979), for its footnoted reference to the "general rule that orders granting a new trial are not appealable." The quoted language was not even on point in terms of the possible reviewability of an exercise of discretion. It was contrasting, rather, the general rule that the **granting** of a new trial by a trial judge is not appealable because it is non-final from the very different finality rule that the granting of a new trial by a reviewing court *en banc* is considered a final judgment and is, therefore, appealable. *Estep v. Estep* had nothing to say with respect to the issue then being considered in *Buck v. Cam's Rugs* or now before us.

---

from protesting. If, on the other hand, the trial court considered but then denied the untimely filed Motion for a New Trial, the State would not care whether it had won its case on the merits or by having the appeal dismissed. The issue of a trial court's "exceeding its jurisdiction," however, might possibly make it up to appellate review in a civil context.

A more careful analysis of the creeping expansion of what new trial motion rulings were reviewable under the "abuse of discretion" standard was that made by Judge Orth in *Pinkney v. State,* 9 Md.App. 283, 293, 263 A.2d 871 (1970). After pointing out the general rule "that the appellate court cannot review the ruling of a trial court on a Motion for a New Trial," Judge Orth noted that that traditional rule of unreviewability "has been tempered to a limited degree." After citing cases that had seemingly broadened reviewability by adding the proviso "absent abuse of discretion," he went on carefully to point out the limited content of that term of art "abuse of discretion" in the context of appeals from rulings on new trial motions:

> *Abuse of discretion* as an exception to the general rule, from the adjudicated cases, *has been applied only where the trial court refused even to consider newly discovered evidence* as in *W.B. & A.R. Co. v. Kimmey,* 141 Md. 243 [118 A. 648], to which reference was made in *Givner v. State,* 208 Md. 1 [115 A.2d 714] and stated as an exception in *Burley v. State,* 239 Md. 342, 344 [211 A.2d 714]. We stated the exception in *Adams v. State,* 4 Md.App. 135, 140 [241 A.2d 591] but did not find it applicable to the facts of that case. In *Elder v. State,* 7 Md.App. 368, 373 [255 A.2d 91] and *Stallard v. State,* 6 Md.App. 560, 563 [252 A.2d 267] we stated what we deem to be now the general rule—the granting of a new trial lies within the sound discretion of the trial court and is not reviewable by this Court.

(Emphasis supplied).

As long as the pertinent evidence is considered by the trial judge, the "abuse of discretion" standard does not even apply to the actual exercise of discretion on the ultimate merits. The erroneous belief that it does apply has arisen from the linguistically slack use of that term of art to describe instances of the non-exercise of discretion. Once that standard was in circulation, its original limited use can all too easily and inadvertently be expanded into a far more general use.

Before reaching its conclusion, 328 Md. at 57, 612 A.2d 1294, that "the sometimes confusing use of language in the past" had rendered the issue of what was reviewable under the abuse-of-discretion standard "up for grabs," the *Buck v. Cam's Rugs* opinion did have the benefit of citing to the case of *Wernsing v. General Motors Corp.*, 298 Md. 406, 470 A.2d 802 (1984). *Wernsing v. General Motors Corp.* is aberrational. It dealt with the improper use of a dictionary in the jury room. The opinion concluded that the trial judge, in ruling on a Motion for New Trial, had before him and considered all of the pertinent evidence. On the ultimate merits (the weighing of probable prejudice), however, a Maryland appellate court for the first time substituted its judgment for that of a trial judge:

It is the function of the trial judge when ruling on a motion for a new trial to evaluate the degree of probable prejudice and whether it justifies a new trial. That judgment will not be disturbed but for an abuse of discretion.

Under the unusual facts of the case at bar, we hold that there was an abuse of discretion.

298 Md. at 420, 470 A.2d 802. This is the only case, civil or criminal, where a trial judge's actual exercise of discretion in denying a Motion for New Trial has been reversed as an abuse of discretion.

On the issue of reviewability now before us, too much significance should not be read into the *Wernsing v. General Motors Corp.* decision for the opinion did not give any express consideration to the reviewability question. It analyzed the issue of the dictionary in the jury room just as it would have analyzed that issue on direct appeal from a trial ruling. On the legal merits of the issue, the opinion then reached for what it deemed to be the proper legal result, without any apparent thought for the special problem of whether a trial judge's actual exercise of discretion on a Motion for New Trial was even reviewable.

In any event, with the benefit of the *Wernsing v. General Motors Corp.* decision, *Buck v. Cam's Rugs* moved on to its conclusion:

Notwithstanding the sometimes confusing use of language in the past, *we make it clear that the correct statement of law in this area was set forth by Judge Davidson for the Court* in *Mack v. State,* 300 Md. 583, 600, 479 A.2d 1344 (1984):

> The question whether to grant a new trial is within the discretion of the trial court. *Ordinarily, a trial court's order denying a motion for a new trial will be reviewed on appeal if it is claimed that the trial court abused its discretion.* However, an appellate court does not generally disturb the exercise of a trial court's discretion in denying a motion for a new trial (Citations omitted).

Although, as the defendant learned earlier in this case, an order granting a new trial is not immediately appealable because it is an interlocutory order, an order granting a new trial is ultimately reviewable when an appeal is taken from the final judgment. Thus, *the issue of whether Judge Murphy erred in granting a new trial is now properly before the Court, for review under an abuse of discretion standard.*

328 Md. at 57, 612 A.2d 1294 (emphasis supplied).

The single sentence from *Mack v. State* relied upon as "a correct statement of the law" was not only *dicta,* it was wrong. In *Mack,* 300 Md. at 600, 479 A.2d 1344, the *dictum* and its authority were thus stated:

> *Ordinarily, a trial court's order* denying a motion for a new trial *will be reviewed* on appeal if it is claimed that the trial court abused its discretion. *Kirsner v. State,* 296 Md. 567, 570–71, 463 A.2d 865, 867 (1983); *Colter v. State,* 219 Md. 190, 192, 148 A.2d 561, 561 (1959).

(Emphasis supplied).

The two cases cited as authority for the proposition that "Ordinarily, a trial court's order denying a motion for a new trial will be reviewed on appeal," however, hold precisely to the contrary. *Colter v. State,* 219 Md. at 191–92, 148 A.2d 561, held simply:

It is quite clear that an appeal will not lie from an order denying a new trial, at least where it is not claimed that there was an abuse of discretion. *Williams v. State,* 204 Md. 55, 66, 102 A.2d 714, and cases cited; cf. *Clay v. State,* 211 Md. 577, 587, 128 A.2d 634.

*Colter* cited *Clay v. State,* 211 Md. 577, 587, 128 A.2d 634 (1957) as authority. The total discussion in *Clay* consisted of the following:

In any event, we think *the motion* amounted to no more than one *for a new trial, which is not a proper subject for appeal.*

(Emphasis supplied).

The other authority cited by *Colter* was *Williams v. State,* 204 Md. 55, 66, 102 A.2d 714 (1954), fully discussed by Judge Smith in *Kirsner v. State,* 296 Md. 567, 570–71, 463 A.2d 865 (1983), the second authority relied on for the *Mack dictum.* The entire discussion by Judge Smith, 296 Md. at 570–71, 463 A.2d 865, is in diametric contradiction of the proposition for which *Mack* cited it:

[W]e point out that in *Colter* Judge Henderson also said for the Court:

"It is quite clear that an appeal will not lie from an order denying a new trial, at least where it is not claimed that there was an abuse of discretion. *Williams v. State,* 204 Md. 55, 66 [102 A.2d 714], and cases cited...." *Id.* [at] 191–92 [148 A.2d 561].

*It no doubt was a case such as Washington, B. & A.R. Co. v. Kimmey,* 141 Md. 243, 250, 118 A. 648 (1922), *Judge Henderson had in mind when he referred for the Court to "an abuse of discretion"* insofar as denying a new trial was concerned. There the trial court was found to have failed to exercise its discretion.

In *Williams v. State,* 204 Md. 55, 102 A.2d 714 (1954), Chief Judge Sobeloff said for the Court:

"In this State a motion for a new trial is addressed to the discretion of the court in criminal as well as civil cases, and *from an order overruling such a motion no appeal*

*will lie. Archer v. State,* 45 Md. 457 [ (1876) ]; *Miller v. State,* 135 Md. 379, 382 [, 109 A. 104 (1919) ]; *Myers v. State,* 137 Md. 482, 487 [, 113 A. 87 (1921) ]; *Bosco v. State,* 157 Md. 407, 410 [, 146 A. 238 (1929) ]; *Wilson v. State,* 181 Md. 1, 8 [, 26 A.2d 770 (1942) ]; *Quesenbury v. State,* 183 Md. 570, 572 [, 39 A.2d 685 (1944) ]; *Haley v. State,* [200 Md. 72, 77, 88 A.2d 312 (1952) ]. *Cf. Snyder v. Cearfoss,* 186 Md. 360, 367 [, 46 A.2d 607 (1946) ]." 204 Md. at 66–67 [102 A.2d 714].

In *Dutton v. State,* 123 Md. 373, 378, 91 A. 417 (1914), Chief Judge Boyd stated flat-footedly for the Court, *"That the action of the Court in overruling the motion for a new trial is not subject to review by us is too well settled to require or justify the citation of authorities. ..."* To similar effect see *Produce Exchange v. New York P. & N.R. Co.,* 130 Md. 106, 113, 100 A. 107 (1917), and *Patterson v. M. & C.C. of Balto.,* 127 Md. 233, 242, 96 A. 458 (1915). The latter case cites for its authority Poe on *Pleadings and Practice.* 2 J. Poe, *Pleading and Practice* § 349 (Tiffany ed.1925), citing a host of cases as its authority, states, "Motions for a new trial are addressed to the sound discretion of the court, and *from its action in granting or refusing them,* whether absolutely or on terms, *no appeal will lie."* The first case cited is *Anderson v. State,* 5 H. & J. 174 (1821), where Judge Dorsey said for the Court:

"But we are decidedly of opinion, that the refusal of an inferior Court to grant a new trial cannot be assigned for error."

(Emphasis supplied).

With respect to the *Mack dictum,* no deference is due to such a blatant misstatement. It is beyond argument that the *Mack dictum* cannot be taken as setting forth "the correct statement of the law in this area." If *Buck v. Cam's Rugs* wanted to announce *ex cathedra* that all rulings on new trial motions are now reviewable by an abuse-of-discretion standard, so be it. To predicate such a change on *Mack,* however, was to build on sand.

Both *Buck v. Cam's Rugs* and *Pinkney v. State* did commendably address the subject of reviewability. Other opinions are beginning to proliferate, however, that make the broadly conclusory pronouncement that rulings on New Trial Motions are reviewable under the abuse-of-discretion standard, with no analysis and with no citation of authority unless to some other opinion making the same broadly conclusory pronouncement.

## Appealability vs. Reviewability

As we discussed earlier, many legal problems turn out to be, at root, linguistic problems. We earlier discussed how the phrase "abuse of discretion" is a treacherous umbrella term, meaning one thing in the context of a Motion for New Trial but something slightly different in the context of a Motion in Arrest of Judgment. When an umbrella term is used in a legal opinion, there is the ever-present danger that the author can have one precise connotation in mind but that the reader can all too easily misapply what he reads to a situation implicating a slightly different connotation. Blatant error is never a problem. It is subtle error that is insidious.

The umbrella term that has given rise to our present state of confusion about the appellate reviewability of a trial judge's exercise of discretion is the word "appealable." It, too, is an umbrella term. At times, it has referred to the basic appealability of a judgment and implicates the very jurisdiction of the appellate court. At other times, it has referred only to the reviewability of a specific sub-issue in the course of a jurisdictionally proper appeal.

The earlier Maryland cases holding that a trial judge's exercise of discretion in granting or denying a Motion for New Trial was not reviewable were careful to use the word "reviewable" in its various verbal forms. Some of the later cases, however, lapsed into a wavering back and forth between the use of "reviewable" and "appealable." None of the cases, of course, ever intended to hold that a ruling on a Motion for New Trial was fundamentally unappealable for they always recognized that the non-exercise of discretion under the

*Wash., B. & A.R. Co. v. Kimmey* exception was always reviewable.

The law has always been that the denial of a Motion for New Trial is indisputably and immediately appealable. By contrast, the granting of a Motion for New Trial, depending upon the result of the new trial, might be ultimately, even though not immediately, appealable. Upon such appeal, the issue of the non-exercise of discretion has always been reviewable, but the issue of the actual exercise of discretion has traditionally been unreviewable. The general appealability of the judgment implies nothing with respect to the specific reviewability of a particular sub-issue upon such an appeal.

Had the case law more carefully used specific terms such as "reviewable" and "appealable" instead of the umbrella term "appealable" with its varying and, therefore, confusing connotations, there would have been no apparent erosion of historic unreviewability and the law would not be in its present state of uncertainty.

### Counterpoint:
### Is the *Wash., B. & A.R. Co. v. Kimmey* Exception
### Now Swallowing the General Rule?

All of that having been said, it is quite possible that *Buck v. Cam's Broadloom Rugs, Inc.*, albeit analytically flawed, has nonetheless brought us to where we ought to be. It may be easier to assess everything by an abuse-of-discretion standard rather than to get mired down in a sorting process of those sub-issues that are reviewable and those that are not.

On the criminal side at least, a heavy percentage of the appeals from the denials of motions for a new trial involve, at least in part, the *Wash., B. & A.R. Co. v. Kimmey* exception to the general rule of unreviewability. An overwhelming majority of such appeals involve claims of newly discovered evidence. Most such appeals are concerned only secondarily with the trial judge's ultimate exercise of discretion. They are concerned primarily with the threshold question of whether the

trial judge even considered the newly discovered evidence, an issue always reviewable under *Wash., B. & A.R. Co. v. Kimmey.*

Closely intertwined with that question are such sub-issues as 1) whether the evidence was, indeed, newly discovered; 2) whether the evidence is material; and 3) whether the evidence could not have been timely discovered with due diligence. *Argyrou v. State,* 349 Md. 587, 600–05, 709 A.2d 1194 (1998); *Love v. State,* 95 Md.App. 420, 621 A.2d 910 (1993). All of those sub-issues involve not subjective discretion but the legal question of whether the evidence was or should have been considered by the trial judge. Those are sub-issues, therefore, that involve the *Wash., B. & A.R. Co. v. Kimmey* exception to the general rule.

At a point, therefore, where the exceptions have become so numerous that they threaten to swallow the rule—at the point where the tail is wagging the dog—it is probably counterproductive to parse too finely the decisional process. Many of the appeals from denials of a new trial involve, moreover, at least two sub-issues, one of which was traditionally reviewable and one of which was not. At a certain point, it is easier to live with an occasional *Wernsing v. General Motors Corp.* than to make the analysis too convoluted. The "abuse of discretion" standard is probably now appropriate in such a large percentage of these appeals from post-trial rulings that we can comfortably live with the standard as a general rule.

**Subsection (b):**

Uniformity is also a consideration. In looking at appeals under Rule 4–331 generally, appeals from a trial judge's decision whether "to set aside an unjust or improper verdict" under subsection (b) have always been reviewable under the abuse-of-discretion standard. That, of course, is because subsection (b) is the lineal descendant of the Motion in Arrest of Judgment, rulings on which were always reviewable under that standard. It would be confusing to have one rule of reviewability for subsection (b) but a different rule of reviewability for subsections (a) and (c).

### Subsection (a):

Even in focusing on subsections (a) and (c), moreover, over the course of the last thirty years the landmark appeals from denials of a new trial have all involved something other than the trial judge's actual exercise of discretion and were all, therefore, reviewable under the abuse-of-discretion standard. Under subsection (a), a reason for urging a new trial "in the interest of justice" is that the verdict was against the weight of the evidence. The review in *State v. Devers and Webster*, 260 Md. 360, 272 A.2d 794 (1971), was properly before the Court of Appeals under the abuse-of-discretion standard, as the Court there ruled that the Court of Special Appeals had used an improper standard in reversing the decision of the trial court. What was at stake was not a trial judge's exercise of discretion but the very existence of a criterion that could be used in the discretionary process. When *In re Petition for Writ of Prohibition*, 312 Md. 280, 539 A.2d 664 (1988), in its turn, overruled *State v. Devers and Webster*, it opted for the more generous weight-of-the-evidence criterion as an available basis for granting a new trial and held, therefore, that the exclusive use of the earlier, more restrictive test would have been an abuse of discretion.

Oddly, since *In re Petition for Writ of Prohibition* settled the issue in 1988 that a trial judge's subjective "sense" that a guilty verdict was against the weight of the evidence could serve as a basis for awarding a new trial, we have had no appellate cases challenging a trial judge's exercise of discretion using that standard. Even if the abuse of discretion standard were used across the board, we are not being flooded with cases asking us to review actual exercises of discretion that were traditionally unreviewable. There is not only no flood of such cases, there is not even a trickle.

### Subsection (c):

Most of the appeals from a trial judge's denial of a Motion for New Trial are these days brought under subsection (c) and involve claims based on newly discovered evidence. The two landmark cases on that subject were properly reviewable

under the abuse-of-discretion standard because they involved not the ultimate exercise of discretion itself but the proper test to be employed when exercising discretion.

In the context of claims based on newly discovered evidence, the Court of Appeals first addressed the issue of how to measure the "interest of justice" in *Stevenson v. State,* 299 Md. 297, 473 A.2d 450 (1984). It analyzed at length, 299 Md. at 301–03, 473 A.2d 450, the minority view that a new trial should be awarded if the newly discovered evidence was such that "the jury *might* have reached a different conclusion." 299 Md. at 302, 473 A.2d 450 (emphasis supplied). It also analyzed the majority position, 299 Md. at 303–04, 473 A.2d 450, that a new trial should only be granted if the newly discovered evidence were "so material that it would *probably* produce a different verdict if a new trial were granted." (Emphasis supplied). In the last analysis, however, the *Stevenson* Court concluded that because the newly discovered evidence did not satisfy the threshold standard of materiality, "We need not decide which standard should apply." 299 Md. at 301, 473 A.2d 450.

In *Yorke v. State,* 315 Md. 578, 556 A.2d 230 (1989), the threshold standard of materiality was satisfied and the issue that had been avoided in *Stevenson* had to be squarely addressed. After recapitulating the *Stevenson* analysis and both the minority and majority positions, Judge Orth observed:

> All in all, we are constrained to conclude that the courts generally play by ear with an ad hoc approach whether the newly discovered evidence calls for a new trial, no matter what words they use to describe the standard alleged to support the decision. It seems that they actually lean on the assertion, which has become a cliche, regarding hardcore pornography made by Justice Stewart, concurring in *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964): "I know it when I see it."

315 Md. at 586–87, 556 A.2d 230. After a thorough analysis of the respective virtues and demerits of the competing stan-

dards, the Court of Appeals forged an intermediate standard of its own:

> We appreciate that it is impossible to formulate a litmus type test that would come up with a "yea" or "nay" as to whether the new evidence would change the verdict. We favor, however, a standard that falls between "probable," which is less demanding than "beyond a reasonable doubt," and "might" which is less stringent than probable. We think that a workable standard is:
>
>> The newly discovered evidence may well have produced a different result, that is, *there was a substantial or significant possibility that the verdict of the trier of fact would have been affected.*

315 Md. at 588, 556 A.2d 230 (emphasis supplied).

If the abuse of discretion standard is now to be employed generally to review a trial judge's actual exercise of discretion in ruling on a Motion for New Trial, it is here under subsection (c), dealing with newly discovered evidence, that the impact, if any, would be felt. Almost all of the appeals from refusals to grant a new trial involve claims of newly discovered evidence under subsection (c). Since most of them involve, in part at least, not just the ultimate exercise of discretion but the question of whether the trial judge considered the ostensibly newly discovered evidence, these cases would have been before us in any event, at least with respect to some of the sub-issues.

To the extent to which the broad use of the abuse-of-discretion standard would subject to appellate review actual exercises of discretion that were traditionally unreviewable, the net effect may be a distinction without a difference. We have found no case in which a trial judge's discretionary refusal to grant a new trial in a criminal case has ever been deemed to have been an abuse of discretion. If the defendant should now be getting more process than was traditionally due, he is simply losing an appeal rather than having an appeal dismissed.

In every reported appeal based on a claim of newly discovered evidence, the refusal of the trial judge to grant a new trial has been affirmed as a non-abuse of discretion. *Argyrou v. State,* 349 Md. 587, 709 A.2d 1194 (1998); *Wiggins v. State,* 324 Md. 551, 570, 597 A.2d 1359 (1991); *Yorke v. State,* 315 Md. 578, 588–90, 556 A.2d 230 (1989); *Bloodsworth v. State,* 76 Md.App. 23, 43–45, 543 A.2d 382 (1988); *Eades v. State,* 75 Md.App. 411, 419–25, 541 A.2d 1001 (1988); *Brittingham v. State,* 63 Md.App. 164, 184–85, 492 A.2d 354 (1985); *Ellison v. State,* 56 Md.App. 567, 581, 468 A.2d 413 (1983); *Harker v. State,* 55 Md.App. 460, 474–75, 463 A.2d 288 (1983); *Crawford v. State,* 37 Md.App. 1, 15–17, 375 A.2d 240 (1977); *Couser v. State,* 36 Md.App. 485, 494–96, 374 A.2d 399 (1977); *Burkett v. State,* 21 Md.App. 438, 319 A.2d 845 (1974); *Butler v. State,* 19 Md.App. 601, 613, 313 A.2d 554 (1974); *White v. State,* 17 Md.App. 58, 64–67, 299 A.2d 873 (1973); *Jones v. State,* 16 Md.App. 472, 475–79, 298 A.2d 483 (1973).

### The *Wash., B. & A.R. Co. v. Kimmey* Exception

In our case, fortunately, we are spared the still perplexing question of whether a trial judge's actual exercise of discretion in denying a Motion for New Trial is properly reviewable. In our case, it is clear that the judge failed to exercise discretion. Under *Wash., B. & A.R. Co. v. Kimmey,* the non-exercise of discretion has always been reviewable under the abuse-of-discretion standard.

The appellant's post-trial motion was actually two alternative motions. The first of the two was a motion for the trial judge to reconsider his earlier decision, at trial, in denying the appellant's Motion for a Judgment of Acquittal:

THE COURT: We are here today to address two matters. The first is a motion for new trial timely filed by Mr. Belcher on behalf of Mr. Isley. Mr. Belcher, I'll be glad to hear from you.

MR. BELCHER: Your Honor, *actually my motion was a motion in the alternative; first to reconsider the motion for judgment of acquittal* that was made during the trial, and second, *in the alternative for new trial.*

THE COURT: You're correct.

(Emphasis supplied).

At the hearing on the alternative motions, the dominant issue for argument and for consideration was clearly the legal issue of whether the State's amended request for discovery operated, as a matter of law, so as to restrict the State's proof of guilt. It is clear, moreover, that counsel for both parties and the trial court so intertwined the two alternative motions that they inadvertently permitted the answer to the purely legal question to serve, as well, as the answer to the discretionary new-trial ruling. Defense counsel concentrated on the legal issue of the State's heightened burden of proof and the legal insufficiency of its case in view of the restricted time frame:

> MR. BELCHER: *I think the motion for judgment of acquittal is properly before the Court.* ... The sole ground that *I'm asking your Honor to reconsider it* at this point is that the case law that I've cited in my motion, and did not have at my fingertips during the trial shows that *by committing themselves to a certain time during the day where these offenses allegedly took place, the government was bound to prove that the offenses took place at those times,* at the specific time, which as they stated was, as the State stated was between 4 p.m. and 11:30 p.m. on or about December 10, 1997.
>
> They did not so prove. There's no evidence, taken in the light most favorable to the government, from which a rational juror, could infer.... The evidence was this happened in the morning, in a fairly short period of time. It did not happen in the afternoon. And under the *Boire* case from New Hampshire and other cases cited in my motion, *although the government perhaps would not have been required to file a bill of particulars specifying exactly when this happened, having done so, they were bound to that particular time.*

(Emphasis supplied).

Responsively, the Assistant State's Attorney focused on the same theme:

MISS GARDNER: *[T]he defense never requested a Bill of Particulars, and that seems to be the basis for the motion for new trial with respect to the particulars went forward on a particular time or that occurred that day.*

(Emphasis supplied).

In resolving that high-profile contention against the appellant, the trial judge seemed clearly to feel that the resolution of that legal issue *ipso facto* also resolved the discretionary issue of whether to grant a new trial:

[B]ased upon their testimony concerning the time proximity of these events the jury could consider the testimony in total in terms of whether or not the State had met its burden to prove that the offenses in question occurred on or about the time frame referenced in the indictment.

*[T]here apparently was not a request for a Bill of Particulars and specifics regarding the date. ... I feel the facts justified the Court's denying the motion for acquittal then and I feel the same way now.... [T]he Court is going to deny the motion for new trial.*

(Emphasis supplied).

The appellant's argument in support of his Motion for New Trial was, however, no mere shadow of his argument on the legal sufficiency of the evidence. Albeit *sotto voce,* the appellant did raise the independent argument that he had been misled into forgoing a possible alibi defense and that he was, for that reason, entitled to a new trial "in the interest of justice."

*It had to do with our lack of notice about a possible alibi defense, because we're given a certain time at which the offense supposedly took place, namely, the afternoon of December 10th.*

*Suddenly at trial we're given testimony it happened in the morning. This prevented my client from developing alibi witnesses which he could have. He was working in*

*the morning just a few houses down from the location at which the crime allegedly took place.*

(Emphasis supplied).

As the appellant now argues (although he was less than clear in his enunciation of the distinction at the time of the new trial hearing), the State's response to the appellant's demand that the State fine-tune its earlier question may have misled the defense in its preparation of the case even though the State's response did not adversely affect the State's burden of proof. If the State's action deliberately or negligently gave the defense such a false sense of security that it caused the appellant to forgo presenting an effective and available defense, that may well have been a circumstance that could persuade a trial judge, in the exercise of discretion, that "the interest of justice" required the granting of a new trial. The resolution of that question was in no way dependent on and in no way followed from the resolution of the first question concerning the legal sufficiency of the State's evidence.

Although the same set of pretrial circumstances—the State's narrowing of the time frame in its request for alibi witnesses—gave rise to both of the appellant's alternative contentions, the respective legal consequences that arguably followed from that simple set of circumstances are not at all the same. We have already rejected the appellant's substantive claim that the State's fine-tuning of its request in any way limited its proof at trial or had any adverse effect on the legal sufficiency of the State's evidence of guilt. As a matter of law, it did not.

In the context of his Motion for New Trial, on the other hand, the appellant argues for a very different possible consequence. He argues that the State's misleading narrowing of its request, whether deliberately or only inadvertently deceptive, lured him into believing that there was no tactical necessity to prepare an alibi defense for any time period other than that specified in the State's amended request. If, indeed, the appellant had a solid alibi defense for the ultimately critical time period but was prevented from developing and deploying

it, he may thereby have been denied a fair trial. That argument he addressed, at least obliquely, to the trial judge's discretion by way of his Motion for New Trial.

The resolution of the first of the alternative motions involved nothing but the straightforward application of legal principles. The resolution of the new-trial question, by contrast, required an exercise of discretion. The correct resolution of the one issue was not *ipso facto* the necessarily correct resolution of the other. The whole argument about a lost alibi defense may, of course, be nothing but a *post-hoc* smokescreen, but the appellant is at least entitled to have it considered.

We hold that the trial judge in this case erroneously failed to exercise his discretion. The failure of the appellant to file a Bill of Particulars, which the judge found to be dispositive on the first issue, had nothing to do with the new-trial issue. The fact that the State's fine-tuning of its request for alibi witnesses had no legal effect in terms of restricting its proof of guilt does not mean that the fine-tuning, considered only as a random event without literal legal consequences, might not have had the adverse effect urged by the appellant. The subjective "sense" of a trial judge in this regard would by no means be controlled by the objective resolution of the strictly legal question.

Because of the failure of the trial judge to consider this argument and to exercise his discretion with respect to it, the appellant was, in the words of *Browne v. Browne*, 22 Md. at 112, "deprived of the exercise of the judgment and discretion of the court ... to which he had a legal right." In the words of *Wash., B. & A.R. Co. v. Kimmey*, 141 Md. at 250, 118 A. 648, "The defendant was entitled to the exercise of a sound discretion in the disposition of its motion."

We are by no means holding that the trial judge abused his discretion in denying the Motion for New Trial. We are holding, quite distinctly, that he erroneously failed to exercise that discretion. We adamantly refuse to apply the same phrase—"abuse of discretion"—to both the arguably ill-consid-

ered but actual exercise of discretion, on the one hand, and the total failure to exercise discretion, on the other. There is a big difference between 1) affirmatively deciding something wrong and 2) failing to make any decision at all. Those respective phenomena are so distinct that our vocabulary ought to be capable of maintaining, rather than blurring, that distinction.

### The Remedy for
### The Non–Exercise of Discretion

Accordingly, we vacate the judgment of conviction and remand the case for further proceedings so that the trial judge may exercise his discretion to determine whether, pursuant to Md. Rule 4–331(a), the "interest of justice" requires the granting of the appellant's Motion for New Trial. Let it be clear that this limited remand in no way intimates in which direction we think the trial judge should exercise his discretion. That is not in our place to suggest, even if we were competent to do so.

We were not at the trial and are ill-equipped to make subjective assessments of how it went. We did not observe the witnesses and their demeanor. As *Buck v. Cam's Rugs* pointed out, 328 Md. at 59, 612 A.2d 1294:

[T]he exercise of ... discretion depends upon *the opportunity of the trial judge ... to feel the pulse of the trial* and to rely on his own impressions in determining questions of fairness and justice.

(Emphasis supplied). *See also Argyrou v. State,* 349 Md. at 600, 709 A.2d 1194.

We have no "feel for the pulse" of whether the time of day when the crime occurred was truly a core issue. It may have been a critical question; it may, on the other hand, be nothing more than an opportunistic afterthought. The appellant and the victim were married to each other. The real issue in this bizarre trial may have been a "He said" versus "She said" credibility battle that had little or nothing to do with the victim's blurred memory of the precise time of day. The only

pertinent defense may have been, "I never did anything like that to my wife at all," and not, "I couldn't have done it at that particular time." We do not know how the trial went in that regard and, even if we did, it is not our call to make. We are simply remanding so that the trial judge may make his subjective determination of whether this really mattered. He remains absolutely free to exercise his discretion in either direction.

As we have fully discussed earlier in this opinion, the trial judge, in his essentially unfettered discretion, may also find dispositive the non-preservation of this issue by timely objection at trial and the fact that the appellant might have been able fully to develop any possible alibi defense if he really had one and had he timely sought a continuance in order to do so.

## The Granting of a New Trial
## Is Not a Sanction Against the State

As to how a trial judge weighs or measures the "interest of justice" in the context of ruling on a Motion for New Trial, there is little guidance in the case law. One thing, however, is clear. The measurement must be made in terms of the impact the phenomenon in question had on the defense of the case. In the words of Judge Orth in *Yorke v. State,* 315 Md. at 588, 556 A.2d 230, the pertinent question is whether "there was a substantial or significant possibility that the verdict of the trier or fact would have been affected."

The granting of a new trial is not available as a sanction to punish or to upbraid the State even if the State's conduct were deemed to have been negligent or even deliberately deceptive. (We are not suggesting that it was.) It is only the impact of the State's conduct on the course of the trial that might have pertinence.

## The Burden of Proof
## On A Motion For New Trial

One final factor remains to be entered into the equation. Where the evidence and the argument at a hearing on a

Motion for New Trial is so frustratingly scant that the trial judge cannot arrive at a definitive conclusion one way or the other, how does he resolve his doubt? To wit, who loses the nothing-to-nothing tie? In law, of course, there are no ties for we have created a device called the allocation of the burden of proof for the precise purpose of breaking ties. That party to whom the burden of proof is allocated is, by definition, the loser of a tie.

At a hearing on a Motion for New Trial, the burden of persuading the trial judge that such a remedy is called for is on the defendant, as the moving party. In the context of affirming the denial of a Motion for New Trial on the ground of newly discovered evidence, Chief Judge Bell concluded for the Court of Appeals in *Argyrou v. State*, 349 Md. 587, 609, 709 A.2d 1194 (1998):

> As the proponent of the new trial motion, the petitioner had the burden of establishing, among other things, that the confession was newly discovered evidence. *The petitioner simply failed to carry it.* Accordingly, the trial court did not abuse its discretion when it denied the petitioner's motion for new trial.

(Emphasis supplied). If the judge's mind is in a state of equilibrium, the defendant has obviously failed to carry his burden of proof and, therefore, loses.

## One Final Word

It follows from everything we have said that whatever the trial judge does on remand will be essentially impervious to appellate second-guessing. If, following the remand, this case were to come back before us and, even assuming reviewability, were we then to reverse an actual exercise of discretion by a trial judge in granting or denying a Motion for New Trial in a criminal case in Maryland, such reversal would be the first in recorded history.

*JUDGMENT VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY BE-*

*TWEEN THE APPELLANT AND PRINCE GEORGE'S COUNTY.*